# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KA-00530-SCT

*TIMOTHY HOOPS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/05/92 |
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID ISHEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | HARKEY, DALE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 8/22/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/12/96 |

**BEFORE SULLIVAN, P.J., BANKS AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This case entails another unfortunate instance of street violence involving the youth of our communities. The community in this story is Pascagoula. During the evening of November 23, 1991, between 7:00 and 8:00 p.m., Lorenzo Bell, Rube Henry Webb, and several other young men were walking away from the Seacove apartments. All the men in the group were black. As they were walking, a car drove past them repeatedly. Timothy Hoops and Ronnie Anderson were in the car. Hoops is white and Anderson is black. After passing the group the third time, the car stopped and a group of six or seven young men got out and approached Bell and the others. Hoops and Anderson were in the group. As Bell and company were walking, Anderson came up to Bell and said, "what's up." At that point, Anderson drew a gun and shot Bell in his calf. This was followed by a round of five to seven more shots from other members in Anderson's group. Hoops also had a gun and was seen shooting along with Anderson. Webb was struck in the arm by one of the bullets.

¶2. Hoops claimed that he was not present at the shooting. At trial, he offered his mother as an alibi witness. She told the court that Hoops had been with her during the entire evening of November 23, 1991.

**STATEMENT OF THE LAW**

**I.**

**THE TRIAL COURT ERRED IN OVERRULING MR. HOOPS'S MOTION TO
QUASH/DISMISS THE INDICTMENT BASED ON JUDGE BILL JONES'S
SUPPLEMENTAL CHARGE TO THE APRIL, 1992, GRAND JURY.**

¶3. During the empaneling of the April 1992, Jackson County Grand Jury, Judge William B. Jones made a supplemental charge to the jurors. Before the commencement of trial, Hoops's attorney filed a motion to quash the indictment. Hoops claimed that Judge Jones's comments improperly targeted him for investigation and denounced him individually, thereby tainting the grand jury and its subsequent indictment.[1] The challenged charge expressed the following:

> I want to instruct the grand jury to pay close attention to any gang related crimes, especially involving illegal drugs. It's this Court's belief that fully eighty (80) percent of our crime on the streets originates either or indirectly from the illegal use of drugs.
>
> This nation has always been justly proud of our open borders but the Federal Government has failed to protect its citizens from the importation of cocaine into this country. Our borders are like leaking sieves. Our local youth have had access to cocaine and crack cocaine, which is highly addictive. It has made some of them "crazies", who lose contact with reality and think nothing of shooting innocent people on the street, in their car, or shooting into someone's home.
>
> Every citizen in the county is justly entitled to have safe passage and to drive in any area of Jackson County without fear of being harmed.
>
> Be watchful during your deliberations to do your best to help our law enforcement officers to prevent any of these "crazies" from taking over our streets through fear. Let's get the "crazies" with guns off the streets.

¶4. Hoops contends that the trial judge usurped his power by directly, or indirectly, drawing the grand jury's attention to his case in direct contradiction to ***Blau v. State***, 82 Miss. 514, 34 So. 153 (1903). In ***Blau***, this Court stated the following:

> In directing the attention of the grand jury to particular offenses or classes of offenses, to crime and the necessity of suppressing it, a very large, necessary, and useful discretion is conferred upon the presiding judge, and this court will not undertake to control that discretion unless manifestly abused.

***Blau***, 82 Miss. at 521, 34 So. at 156. Such abuse exists where the trial judge denounces individuals or specifically directs the grand jury's attention to any named person. ***Fuller v. State***, 85 Miss. 199, 204, 37 So. 749, 750 (1905). In fact, it is not necessary that the individual's name be mentioned by the trial judge as long as there is no question that the charge specifically targeted the indictee. ***See Necaise v. Logan***, 341 So. 2d 91, 93 (Miss. 1976).

¶5. Hoops was seventeen years old at the time the Jackson County Grand Jury heard this matter.

According to Hoops, only two other cases involving minors were presented to this grand jury, and therefore, the class of youthful offenders was so small that any reference to them would bring unwarranted attention to their respective cases. Hoops additionally claims that Judge Jones's comment about "crazies with guns" brought unfair attention to his case because he was charged with a crime that involved a handgun.

¶6. The State counters that the supplemental charge did not unfairly target Hoops for indictment. The State chiefly relies upon *Fuller,* to support its contention. In *Fuller*, the trial judge expressly mentioned the indictee's name to the grand jury. In sustaining the motion to quash, this Court clarified the scope of a trial judge's discretion when supplementing a charge to a grand jury and stated the following:

> The circuit judge is vested with power to specifically call the attention of grand jurors to all statutes which the public interest may require shall be brought to the consideration of the grand jury. This grant of power carries with it the authority to decide what class of offenses the public interest demands shall receive special attention by the grand jury. And in deciding this the circuit judge must necessarily be guided, to a great extent, by his knowledge of the social conditions as they exist in each county at the time when the grand jury is impaneled therein. . . . **It would be folly to hold that a circuit judge should not be permitted to charge the grand jury in reference to a particular class of crimes, for the reason that such charge might have the effect of directing the attention of the grand jury to the individuals who are guilty of the crimes. In truth, this is the object at which the charge to the grand jury is aimed, the purpose which it hopes to effect**.

*Fuller*, 85 Miss. at 203-04, 37 So. at 750 (emphasis added).

¶7. In the instant case, the trial judge did no more than direct the grand jury's attention to a specific class of crimes that he felt was worthy of special attention. He did not focus on one particular crime; rather, he focused on a troublesome situation in the community that spawned various serious crimes. That Hoops coincidentally fell into one of the crimes that the trial judge highlighted for scrutiny does not mean that the trial judge individually singled him out for indictment. Our jurisprudence does not prohibit the isolation of classes of crimes, only the isolation of specific individuals.

¶8. The trial judge also made no indirect reference to Hoops as forbidden in *Necaise, supra.* That case involved a district attorney's attempt to expunge a portion of a trial judge's supplemental grand jury charge. The trial judge charged the grand jury "that citizens had 'represented to the Court' that the district attorney had 'failed and refused to prosecute and investigate . . . .'" *Necaise*, 341 So. 2d at 93. Necaise argued that the charge singled him as a target for grand jury action and this Court agreed. The case at bar is quite different. The trial judge's remarks about the district attorney in *Necaise* could only be directed at a specific person: district attorney Necaise. Nothing, however, suggests that Judge Jones's charge was specifically directed at Hoops, the individual; rather, Judge Jones's charge was specifically directed at a class of crimes.

¶9. *Wheeler v. State*, 219 Miss. 129, 63 So. 2d 517 (1953), *cert. denied*, 346 U.S. 852 (1953), is also quite instructive on this subject. That case dealt with a murder conviction in connection with the shooting deaths of two Hattiesburg policemen by Wheeler and another individual. The defendants were not from Hattiesburg. In appealing the murder conviction, Wheeler complained that the trial

judge's charge coerced the grand jury into returning an indictment against him. The challenged charge read as follows:

> I am informed, and it is no use for a man to stick his head in the sand like an ostrich and try to dodge, I am informed that recently in this county some people have come into the county and taken the lives of two soldiers who have paid the supreme sacrifice to uphold the law. Their blood cries out from the ground to you today. Will you be a good soldier, or will you hide in the dugout?

*Wheeler*, 219 Miss. at 144, 63 So. 2d at 523. Despite the quite specific nature of the charge, this Court found that it did not coerce the grand jury.

¶10. In the case sub judice, the supplemental charge is not nearly as specific as the charge made by the trial judge in *Wheeler*. Its specificity falls somewhere between the *Wheeler* charge and the charge made in *Necaise*. Accordingly, the trial judge did not abuse his discretion when he made this supplemental charge to the Jackson County Grand Jury in April 1992. This assignment of error is without merit.

## II.

### THE TRIAL COURT ERRED IN OVERRULING MR. HOOPS'S MOTION TO QUASH THE VENIRE OR IN THE ALTERNATIVE TO CONTINUE THE CASE.

¶11. Hoops claims that he made a motion to quash the venire due to a series of newspaper articles that appeared in the <u>Mississippi Press</u>, a local newspaper, during the week preceding the trial.[2] The articles dealt with violent crimes committed in the community by youths, as well as, the escalation of gang activity in the area and its relation to increased drug trafficking. Hoops claims that the articles had the potential to inflame the venire against any youth charged with a violent crime, and especially against him, due to his alleged gang involvement. Since the trial judge refused to quash the venire on this basis, Hoops believes that he was denied a fair trial.

¶12. Hoops cites no legal authority to support this argument. This Court has held that it is the duty of an appellant to provide authority and support of an assignment. *Kelly v. State*, 553 So. 2d 517, 521 (Miss. 1989); *Brown v. State*, 534 So. 2d 1019, 1023 (Miss. 1988); *Harris v. State*, 386 So. 2d 393 (Miss. 1980). If a party does not provide this support this Court is under no duty to consider assignments of error when no authority is cited. *Hewlett v. State*, 607 So. 2d 1097, 1106 (Miss. 1992); *Kelly*, 553 So. 2d at 521; *Brown*, 534 So. 2d at 1023. Despite his procedural bar Hoops's argument is without merit.

¶13. The usual procedure employed when the accused believes he cannot get an impartial jury in a particular county is a motion for a change of venue. *Sessum v. State*, 221 So. 2d 368, 371 (Miss. 1969). The decision to grant the venue change is in the sound discretion of the trial judge. *Porter v. State*, 616 So. 2d 899, 905 (Miss. 1993) (citing *Harris v. State*, 537 So. 2d 1325, 1328 (Miss. 1989)). The motion must be in writing and supported by affidavits of two or more credible persons showing that the defendant cannot receive an impartial and fair trial in that particular county because of prejudgment of the case or grudge or ill will to the defendant in the mind of the public. Miss. Code Ann. § 99-15-35; *Porter*, 616 So. 2d at 905-06 (citation omitted).

¶14. Turning to the case at bar, this Court finds that the only change of venue motion made on behalf of Hoops was made *ore tenus* on the Friday before trial. At that time Hoops's attorney joined in a change of venue motion that had been filed by counsel for his co-defendant. Although Hoops's co-defendant apparently supported the motion with affidavits as required by statute, Hoops did not provide the trial court with any statement and affidavits swearing that he could not receive a fair and impartial trial. Since Hoops failed to comply with the requirements of Miss. Code Ann. § 99-15-35 and to cite to any legal authority to show why his argument merits relief, the argument must fail.

### III.

### THE TRIAL COURT VIOLATED RULES 609(a), 401, 402, 403 AND 404 OF THE MISSISSIPPI RULES OF EVIDENCE BY OVERRULING DEFENDANT'S MOTION FOR A MISTRIAL WHEN THE STATE'S WITNESS MADE REFERENCE TO OTHER CRIMES EVIDENCE.

¶15. Hoops complains that during the trial Lorenzo Bell made references to other aggravated assaults allegedly committed by him (Hoops) prior to the shooting in question. The references were elicited by Hoops's counsel during cross-examination of Bell. The pertinent testimony is as follows:

Q You made some statements earlier, sir, about knowledge of Timmy Hoops being in a gang. How do you know that personally? Were you at the gang initiation?

A No. I just--we used to come over to Timmy Hoops house, you know, to visit, you know. And Timmy Hoops has got one of the rags and everything.

Q I can't understand what you said.

A He used to have one of the rags and everything, scarf, red bandana.

Q So, he was wearing a red bandana. That's how you knew that he was allegedly affiliated--

A --Yeah. He used to shoot at other G's, what I recall, too.

Q I couldn't understand what you said.

A He used to shoot at other G's, what I recall. You know what I'm saying.

Q I think so.

At that point, counsel for Hoops requested the judge to remove the jury from the courtroom. Hoops's counsel then made a motion for a mistrial, which the trial judge denied. Counsel also requested the trial judge to order jurors to disregard Bell's remarks, and they were so instructed upon their return to the courtroom. It is Hoops's contention that Bell's statements tainted the jury to such a degree that he did not receive a fair trial.

¶16. Hoops grounds his argument in Miss. R. Evid. 609(a). That rule states:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-

examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

Miss. R. Evid. 609(a). According to Hoops, Bell's statements fall outside of the scope of this rule since he (Hoops) had never been convicted of aggravated assault prior to trial; therefore, the statements were inadmissible and prejudicial.

¶17. Hoops also contends that the trial judge should have excluded Bell's statements under Rule 403 of the Mississippi Rules of Evidence because the remarks only served to inflame the jury. Miss. R. Evid. 403 allows the trial judge to exclude relevant evidence as long as its probative value is substantially outweighed by the danger of unfair prejudice or by the danger of misleading the jury.

¶18. He furthermore maintains that the statements qualified for a curative instruction based on Rules 404(a) and 404(b) of the Mississippi Rules of Evidence. Miss. R. Evid. 404(a) generally forbids the admission of character evidence to prove that someone acted in conformity with that trait on a particular occasion. Miss. R. Evid. 404(b) prohibits the use of evidence of other crimes, wrongs, or acts to prove that a person acted in conformity with that action unless the evidence is used to show some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶19. The State argues that Hoops cannot complain about Bell's testimony because he invited the potentially damaging statements through his cross-examination of Bell and because the trial judge admonished the jury to disregard the remarks.

¶20. The granting of a motion for a mistrial is within the sound discretion of the trial judge. ***Bass v. State***, 597 So. 2d 182, 191 (Miss. 1992) (citing ***Ladner v. State***, 584 So. 2d 743, 753 (Miss. 1991), ***cert. denied***, 502 U.S. 1015 (1991)). "[I]f the inadmissible testimony is so damaging that its effect upon the jury could not be adequately tempered by admonition or instruction, the trial court should grant a mistrial." ***Baine v. State***, 604 So. 2d 249, 257 (Miss. 1992) (citing ***Reynolds v. State***, 585 So. 2d 753, 755 (Miss. 1991); ***Davis v. State***, 530 So. 2d 694, 697 (Miss. 1988)).

¶21. Clearly, the trial judge implicitly sustained Hoops's objection to Bell's remarks when he instructed the jury to disregard the statements.

> This Court has repeatedly and consistently held that such action is sufficient to remove any prejudice resulting from the improper testimony. ***See Dennis v. State***, 555 So. 2d 679, 682-83 (Miss. 1989) (improper speculative testimony rendered non-prejudicial when trial court sustained objection and instructed jury to disregard it); ***Wright v. State***, 540 So. 2d 1, 4 (Miss. 1989) ("Absent unusual circumstances, where objection is sustained to improper questioning or testimony, and the jury is admonished to disregard the question or testimony, we will not find error"); ***Marks v. State***, 532 So. 2d 976, 982 (Miss. 1988) (refusal to grant mistrial was proper where trial court sustained objection and instructed jury to disregard improper testimony). ***See also Smith v. State***, 530 So. 2d 155, 161 (Miss. 1988); ***Wetz v. State***, 503 So. 2d 803, 810 (Miss. 1987); ***West v. State***, 485 So. 2d 681, 689-90 (Miss. 1985), ***cert. denied***, 479 U.S. 983, 107 S.Ct. 570, 93 L.Ed.2d 574 (1986); ***McFee v. State***, 511 So. 2d 130, 135 (Miss. 1987);

*Stringer v. State*, 477 So. 2d 1335 (Miss. 1985); *Johnson v. State*, 475 So. 2d 1136, 1142 (Miss. 1985); *Sand v. State*, 467 So. 2d 907 (Miss. 1985); *Fairley v. State*, 467 So. 2d 894 (Miss. 1985), *cert. denied*, 474 U.S. 855, 106 S.Ct. 160, 88 L.Ed.2d 133 (1985); *May v. State*, 460 So. 2d 778, 783 (Miss. 1984); *Herron v. State*, 287 So. 2d 759, 766 (Miss. 1974), *cert. denied*, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974).

*Baine*, 604 So. 2d at 257.

¶22. Hoops also invited the testimony by his questioning of Bell on cross-examination. While Hoops's counsel may not have intended for Bell to testify that Hoops shot at "G" members on some other occasion, he did ask Bell how he knew that Hoops was in a gang. Generally, a defendant cannot complain of damaging and inappropriate testimony if the testimony is in response to his questions. *Griffin v. State*, 504 So. 2d 186, 192 (Miss. 1987) (citing *Edwards v. State*, 441 So. 2d 84, 90 (Miss. 1983)); *Brown v. State*, 534 So. 2d 1019, 1024 (Miss. 1988) (citing *Gholar v. State*, 203 Miss. 371, 35 So. 2d 706 (1948)). Just minutes before Bell was asked how he knew Hoops was in a gang, Bell testified on direct that he "hung" with the G's, a rival gang. Certainly, in light of this testimony it cannot be said that Hoops was blind sided by Bell's remarks. Bell gave a direct and responsive answer to the question. Hoops elicited the response and therefore cannot complain that the answer was one he did not want.

¶23. This Court recently stated in *Perkins v. State*, 600 So. 2d 938 (Miss. 1992), that

[c]ase law unequivocally holds that the trial judge "is in the best position for determining the prejudicial effect" of an objectionable remark. The judge is provided considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. Where "serious and irreparable damage" has not resulted, the judge should "admonish the jury then and there to disregard the impropriety." [citations omitted]

*Perkins*, 600 So. 2d at 941 (quoting *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)). Under the circumstances in the instant case, no serious or irreparable damage resulted from Bell's remarks. The statements were not solicited by the prosecution, but by Hoops. Furthermore, the trial judge directed the jury to ignore the inappropriate response. Since the jury is presumed to have followed the admonition of the trial judge to disregard Bell's remarks, there is no merit to Hoops's contention that the remarks constituted reversible error. *See Estes v. State*, 533 So. 2d 437, 439 (Miss. 1988).

## IV.

## THE TRIAL COURT ERRED IN ALLOWING THE STATE TO PUT FORTH TESTIMONY ABOUT GANGS AND ALLEGED GANG INVOLVEMENT OF THE APPELLANT.

¶24. Prior to trial, Hoops joined in a motion in limine to prevent the State from introducing evidence of his alleged involvement in a gang. The State opposed the motion and argued that proof of Hoops's gang involvement was relevant and probative to establish a motive for the shooting. The trial judge overruled Hoops's motion based on Miss. R. Evid. 404(b) and stated that he would admit such evidence as long as the prosecution laid a proper predicate at trial.

¶25. During the trial, the following colloquy developed between the State's witness Bell and the district attorney:

> Q Of your own personal knowledge do you know why Mr. Anderson and Mr. Hoops would shoot at you?
>
> A Yeah, it got to be gang violence. They hang with the Bloods.
>
> BY MR. SIMONS: We would object to that, Your Honor, and ask that the jury be excused.
>
> BY MR. ISHEE: We would also object to that, Your Honor.
>
> BY THE COURT: What's your objection?
>
> BY MR. SIMONS: We would object to it subject to some previous motions we filed with Your Honor. And we would ask that the jury be excused right now.
>
> BY THE COURT: Okay. I will excuse the jury for a few minutes.
>
> [Jury excused.]
>
> . . . .
>
> BY THE COURT: . . . The objection will be sustained. And the Court will require you to lay a predicate in regard to gangs or drugs prior to the question as to whether or not he knows he is a gang member.

The district attorney asked questions to lay his foundation, and the trial judge admitted Bell's testimony. Hoops argues that the introduction of this evidence violated Rules 401, 402, 403, 404, and 602 of the Mississippi Rules of Evidence.

### Miss. R. Evid. 401, 402, 404(b)

¶26. In addition to claiming that this evidence was not relevant, Hoops claims that **if** the State was introducing the evidence as a character trait or to impeach his character, then the trial judge erred in admitting it under Rule 404(b). But there is no question about what the State intended to use this evidence for. The record reflects that the prosecution repeatedly requested admission of the evidence to show motive. During the hearing for Hoops's motion in limine, the district attorney made his intentions quite clear. He stated the following:

> I think that that is relevant. I think it is probative, I think it goes toward a motive for an otherwise totally unexplained criminal activity. And I think certainly it is prejudice. Anything you present against a Defendant is prejudice. But certainly it's important in this case because it goes directly to the reason for the shooting. Now simply to make inquiry of an individual, is he in a gang, and he is charged with a crime and there is no relationship and the crime charged, I can see where that would be irrelevant and not admissible. In this particular case it goes to the very heart of the incident. . . . [I]n this particular case I certainly wanted to explore that particular area to show motive and to explain a totally senseless act that would appear to have no other justification. And that would be the State's offer on this particular motion.

To the extent that the State wished to introduce this evidence for reasons other than motive, Hoops's claim is without merit.

¶27. However, Hoops's argument has another point which is worthy of discussion. Although somewhat poorly articulated, Hoops appears to challenge whether membership or affiliation in a gang qualifies as an "act" under Miss. R. Evid. 404(b). The rule states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b).

¶28. This Court has yet to make a determination on this matter, and Hoops cites no authority for his proposition. Many other courts, however, have addressed this issue and have approved the use of evidence of gang affiliation and membership to show motive in certain circumstances. *See State v. Romero*, 870 P.2d 1141, 1147-48 (Ariz. Ct. App. 1993) (citing *United States v. Abel*, 469 U.S. 45, 49 (1984)); *State v. Vickers*, 768 P.2d 1177, 1182 (1989) (evidence of membership in prison gang probative of bias), *cert. denied*, 497 U.S. 1033 (1990); *People v. Mendez*, 582 N.E.2d 1265, 1267 (1991) (defendant's membership in gang relevant to motive for drive-by shooting against rival gang); *People v. Contreras*, 192 Cal.Rptr. 810 (1983) (gang membership relevant to motive for assault and attempted robbery); *State v. Garcia*, 664 P.2d 969 (1983) (prison gang membership relevant to motive in stabbing inmate who had insulted gang), *cert. denied*, 462 U.S. 1112 (1983); *State v. Ruof*, 252 S.E.2d 720 (1979) (defendant's association with motorcycle gang relevant to motive for shooting victim who had come into bar in gang's territory); *People v. Hairston*, 294 N.E.2d 748 (1973) (evidence of membership of defendant and victim in rival gangs relevant to drive-by shooting); John E. Theuman, Annotation, *Admissibility of Evidence of Accused's Membership in Gang*, 39 A.L.R.4th 775 (1985); *United States v. Rodriguez*, 925 F.2d 1049, 1053 (7th Cir. 1991); *State v. Campbell*, 901 P.2d 1050, 1055 (Wash. Ct. App. 1995); *United States v. Santiago*, 46 F.3d 885, 889 (9th Cir. 1995), *cert. denied*, 115 S.Ct. 2617 (1995). It would be folly for this Court to hold that affiliation or membership with a street gang such as this one does not constitute a bad act as contemplated by Miss. R. Evid. 404(b). It is clear that many jurisdictions across the country find gang involvement to be quite probative on the question of motive as suggested by the State. Therefore, this Court should reject Hoops's contention that his alleged involvement in a gang is not subject to the "Other Crimes, Wrongs, or Acts" exception found in Miss. R. Evid. 404(b).

¶29. On the other hand, circuit judges must be quite careful in their assessment of such evidence. While evidence of affiliation or membership with a street gang can certainly be relevant under Miss. R. 404(b), as stated above, it also has the potential to be quite damaging in the eyes of a jury. To ensure that no unfair prejudice accrues to a defendant, a trial judge should administer the balancing test of Rule 403 under the Mississippi Rules of Evidence before admitting such evidence into the trial.

## Miss. R. Evid. 403

¶30. According to Hoops, the labeling of this case as one of gang violence subjected him to a degree

of prejudice that was not outweighed by any probative value the evidence may or may not have had. This is in direct contravention to Miss. R. Evid. 403 which provides the following:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

¶31. This Court has held that even though evidence passes muster under Miss. R. Evid. 404(b), it must still clear the hurdle of a Rule 403 test. Recently, in *Watts v. State*, 635 So. 2d 1364 (Miss. 1994), we stated the following regarding Miss. R. Evid. 403 and 404(b):

> To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

*Watts*, 635 So. 2d at 1368 (quoting *Jenkins v. State*,[3] 507 So. 2d 89, 93 (Miss. 1987)). Consequently, "[t]his rule necessarily vests in the Circuit Court a certain amount of discretion." *Hart v. State*, 637 So. 2d 1329, 1336 (Miss. 1994) (quoting *Stokes v. State*, 548 So. 2d 118, 125 (Miss.1989)).

¶32. The record in the present case reveals that while the trial judge failed to use the "magic words" that he did not find the danger of unfair prejudice to substantially outweigh the probative value of this evidence, he implicitly made that determination. When the prosecution argued for the admission of this evidence during Hoops's motion in limine, he informed the trial judge that although Mississippi had no case law on point, other jurisdictions had found such evidence to be relevant and admissible to show motive. The district attorney cited five cases to the trial judge wherein other courts had determined that such evidence was admissible to show motive despite the fact that it was prejudicial in the public's eyes. After hearing arguments from both parties, the trial judge ruled that the evidence would be admissible as long as it was introduced **to show motive**. Certainly, if the trial judge had felt that the danger of unfair prejudice outweighed the probative value of this evidence he would have so ruled. But he did not. He heard arguments from both sides as to why the evidence was or was not substantially and unfairly prejudicial, and he made his ruling.

¶33. Considering that events never occur in isolation, it cannot be said that the trial judge abused his discretion in admitting this evidence. The jury had a right to view the crime from a proper perspective so that it could genuinely evaluate the evidence. This is especially true in the context of this case as this evidence supported a motive for an otherwise totally unexplained assault in the eyes of Bell. Bell stated that prior to the shooting he had not had any problems with anyone that night. He also stated that he had no knowledge that anyone in the group he was with had provoked Hoops. Bell told the court that he had never had any problems with Hoops nor Hoops's codefendant. However, Bell hung with the G's, and Hoops hung with the Bloods--rival gangs. In fact, all of the people with Bell on the night of the shooting hung with the G's. The two gangs were basically enemies and were always prepared to fight. Without a doubt, this evidence was properly before the circuit court. This Court finds no error.

## Miss. R. Evid. 602

¶34. Hoops posits that this testimony is inadmissible because the State did not lay a proper foundation for its admission and that the State provided no testimony that Bell had personal knowledge of his (Hoops's) initiation into any gang. Miss. R. Evid. 602 pertains to a witness's lack of personal knowledge and declares the following:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

¶35. As an initial point, it should be noted that the trial judge sustained Hoops's initial objection to this evidence because the State failed to lay a proper predicate as mandated by the trial judge during the motion in limine. The trial judge nevertheless allowed the State to proceed with its questions in order to lay the proper foundation for the admission of this evidence. After several more objections, the trial judge determined that the proper predicate was being laid and admitted the evidence under Miss. R. Evid. 404(b).

¶36. The prosecution conceded that it could not conclusively prove that Hoops had been initiated into a gang; however, gang **membership** is not necessarily the ultimate test of relevancy. As previously noted, gang **involvement** is also probative on the matter of motive. One does not have to be a card-carrying member of the Bloods or G's before he or she can develop a motive to commit a violent act against a rival gang. Initiation rites dispel such a notion. "Hanging" with a street gang sufficiently ties an individual to that gang so as to be probative on the subject of motive.

¶37. Bell testified that at the time of the shooting he had known Hoops for a month to a month and a half. Bell saw Hoops on a daily basis. He stated that he was familiar with some of the people who hung with the Bloods and that he was familiar with people that hung with the G's. He knew that the "colors" of the Bloods was red. He knew that the "colors" of the G's was black. According to Bell, he knew that Hoops was a Blood. Bell told the trial court that he had been to Hoops's house, and while there he saw Hoops with a red bandana and scarf. Apparently, these items were worn to show affiliation with a particular gang. Bell also knew that Hoops's co-defendant--whom he (Bell) had known for four or five years--was also affiliated with the Bloods. Furthermore, Bell admitted that he hung with the G's.

¶38. This testimony is manifestly sufficient to indicate that Bell had some personal knowledge of Hoops's involvement with the Bloods. His responses were phrased in terms of "knowing" and not in the sense of speculation or an opinion. He was affiliated with a gang and knew how to identify gang members through the use of gang "colors." He knew Hoops, and he knew his co-defendant. He also knew other individuals who were affiliated with the Bloods.

¶39. Furthermore, under Rule 602, proof of personal knowledge does not necessarily have to come from the testifying witness. As long as **any evidence** is introduced to sufficiently prove the witness's personal knowledge, the witness may testify to that matter. Here, Hoops's own testimony suggests possible involvement with the Bloods. During cross-examination, Hoops stated the following:

> Q Okay. And you hung out with the Bloods, didn't you?

A Well, a few of them. I didn't hang out with them, but [I] know a few of them.

Q Okay. Did you hang out with any G's?

A No, sir.

Q Not at all?

A No, sir.

Q No G's?

A None.

Q But there were some Bloods that you hung out with?

A Not Bloods. People that just think they were Bloods.

. . . .

Q Okay. But what about the want-to-be's?

A Want-to-be's are flipflops.

Q The guys that hang with Bloods?

A Yeah, they just hang with them.

Q In fact, you were a want-to-be, weren't you?

A Yes, sir.

Q How long had you been a want-to-be?

A A few years I hung around with them.

. . . .

Q Your friend here, Ronnie Anderson, how long had he been a friend of yours?

A A few years.

Q Does Ronnie Anderson hang out with the Bloods, also?

A Yes, sir.

Q Excuse me?

A Don't hang out with them, but he knows a few of them like me.

Q Is he a want-to-be?



A Yes, sir.

Q So, neither one of you are in the gangs, you just hang with them?

A Yes, sir.

Hoops then stated the following on re-direct:

Q Tim, you said that at one time you were a want-to-be. Are you still a want-to-be?

A No, sir.

Q Do you have any affiliation with any gang whatsoever at this time?

A No, sir.

Q What caused you to give up this status of a want-to-be?

A I got tired of being accused of things I was doing, and my fiancee helped straighten out my life.

. . . .

Q Do you still hang out or associate with anybody who is affiliated with the Bloods?

A No, sir.

Q When did you stop any of that type of association?

A When I got out on bond.

Q From this incident?

A Yes, sir.

¶40. Certainly, this testimony is indicative of Hoops's involvement with the Bloods. In essence, it corroborated Bell's testimony, and in this light, it is difficult to find much worth in Hoops's contention. While Hoops may not have been a member of the Bloods, he admits to having achieved the status as a "want-to-be" prior to his indictment for this crime. His involvement in the gang was such that he gave up his status as a "want-to-be" because it caused him so many problems. On balance, this Court finds Hoops's gang involvement to be relevant, not unfairly prejudicial, and adequately supported by the evidence. Consequently, this assignment of error is meritless.

## V.

**THE TRIAL COURT ERRED IN GIVING JURY INSTRUCTION S-2, OVER DEFENDANT'S OBJECTION THAT THIS INSTRUCTION WAS NOT AN ACCURATE ASSESSMENT OF THE LAW, FURTHERMORE THE TRIAL COURT ERRED IN REFUSING DEFENDANT'S INSTRUCTION D-8(A) AND D-9(A) WHICH WERE IN FACT ACCURATE ASSESSMENTS OF THE LAW.**

## Jury Instruction S-2

¶41. Hoops argues that Jury Instruction S-2 was an improper statement of the law for three reasons. First, he claims that it was an instruction for accessory to aggravated assault rather than the crime charged. Second, he claims that the instruction assumed that the crime was actually committed. And last, he claims that the instruction informed the jury that he could be found guilty simply by having knowledge of the crime or by unknowingly assisting in the act.

¶42. Jury Instruction S-2 reads as follows:

> The Court instructs the Jury that each person present at the time of, or consenting to and encouraging, aiding or assisting in any material manner in the commission of a crime, or knowingly and wilfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands committed the whole offense.

This instruction pertains to aiders and abettors. "Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender." *Sayles v. State*, 552 So. 2d 1383, 1389 (Miss. 1989)(citing *Bullock v. State*, 391 So. 2d 601 (Miss. 1980), *cert. denied*, 452 U.S. 931 (1981)).

¶43. According to the State, Hoops's first claim is meritless because it ignores the distinction between an accessory and an aider and abettor.

> The primary distinction between the accessory-before-the-fact and an aider and abettor is the actual or constructive presence of the party. If a person was actually or constructively present at the offense, due to his participation he is an aider and abettor. *Walters v. State*, 218 Miss. 166, 65 So. 2d 465 (1953). If he was not present, he is an accessory-before-the-fact. *Clemons v. State*, 482 So. 2d 1102 (Miss. 1985). *See generally* Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* § 6.6(b) at 128 (West 1986); 22 C.J.S. *Criminal Law* § 132 (1989).

*Sayles*, 552 So. 2d at 1389. More importantly, this Court has held that there is no difference between an accessory before the fact and a principal. *State v. Peoples*, 481 So. 2d 1069, 1070 (Miss. 1986). "Under [Miss. Code Ann. § 97-1-3], an accessory to any felony before the fact is a principal and may be convicted as a principal in an indictment charging him or her as principal." *Peoples*, 481 So. 2d at 1070 (citing *Blackwell v. State*, 231 So. 2d 790, 792 (Miss. 1970), *cert. denied*, 400 U.S. 848 (1970); *Hathorn v. State*, 246 Miss. 135, 149 So. 2d 845 (1963); *West v. State*, 233 Miss. 730, 103 So. 2d 437 (1958); *Goss v. State*, 205 Miss. 177, 38 So. 2d 700 (1949)).

¶44. Additionally, Jury Instruction S-2 cannot be construed to be an accessory after the fact instruction. It clearly states that the accused must be involved in the crime either before or during its commission and that the accused will be considered as a principal in the crime. One cannot be both a principal in the crime and an accessory after the fact. *Buckley v. State*, 511 So. 2d 1354, 1358 (Miss. 1987) (citing *Crosby v. State*, 179 Miss. 149, 175 So. 180 (1937)).

¶45. Hoops's next claim is quite vague. He states that Jury Instruction S-2 assumes that the crime

was committed. He offers no explanation or reason why he believes this to be so. The instruction merely states that a person who encourages or aids in the commission of a crime, or who knowingly and wilfully does any act which is an ingredient of the crime is a principal in the crime. Nowhere does the instruction presume that a crime has been committed. This argument accordingly must fail.

¶46. Hoops finally complains that a person who merely has knowledge of the crime or who unknowingly assists in the commission of the crime is guilty under Jury Instruction S-2. As with his previous claim, Hoops offers no explanation for his argument or how the language particularly makes the instruction erroneous.[(4)]

¶47. The State replies that S-2 does not say mere knowledge of a crime makes one guilty. First, the phrase "consenting to and encouraging, aiding or assisting" indicates that more than mere knowledge is required. There must be some participation in the crime by the accused. The phrase "knowingly and wilfully" contemplates that the accused must act with knowledge and deliberation; therefore, the instruction does not deem mere knowledge sufficient to find one guilty.

¶48. As to unknowingly assisting in the act, the State points out that the word "assisting" is used in an interchangeable series with the words "encouraging," "aiding," and "consenting to." (CP 20) ("or consenting to and encouraging, aiding or assisting in any material manner in the commission of a crime, . . ."). The instruction also states that the assistance cannot be insignificant; it must be major. It is difficult to imagine a situation where one can consent to and assist in the shooting of another person without knowing it.

¶49. Jury Instructions S-1(a) and S-1(b) similarly instructed the jury that it had to find beyond a reasonable doubt that Hoops "unlawfully, feloniously, wilfully and purposely, while acting alone or **encouraging, aiding or assisting others in any material manner**" shot Bell and Webb before it could find him guilty. (emphasis added). "This Court does not review jury instructions in isolation." *Nicholson v. State*, 672 So. 2d 744, 752 (Miss. 1996) (citing *Malone v. State*, 486 So. 2d 360, 365 (Miss. 1986)). When read together, these jury instructions reinforce the fact that Hoops's culpability turned on more than unknowing assistance or mere knowledge. They required some cognizant involvement in the crime on his part.

¶50. For these reasons, as well as, the procedural bar, Hoops's claims concerning Jury Instruction S-2 are merit less.

### Jury Instruction D-8(a)

¶51. Jury Instruction D-8(a) was refused by the trial judge, and it included a lesser included offense instruction on the crime of simple assault. Hoops argues that due to the lack of the severity of the victims' wounds, he was entitled to this lesser included instruction.

¶52. Again, Hoops fails to cite to this Court any authority for his position; thus, the issue is procedurally barred. *McClain*, *supra.* Regardless of the bar, Hoops's argument still fails on its merits.

¶53. In *Hutchinson v. State*, 594 So. 2d 17 (Miss. 1992), this Court held that when an accused wields a weapon that is without question deadly and then intentionally strikes his victim, he is not entitled to a lesser included offense instruction for simple assault, even if the injury is relatively slight.

The weapon in this case was a gun. No jury could fail to find a gun to be a deadly weapon. Based on *Hutchinson*, the circuit court committed no error when it refused Jury Instruction D-8(a).

### Jury Instruction D-9(a)

¶54. Jury Instruction D-9(a) included an instruction for the lesser included offense of mayhem. The language of the instruction basically tracks that of Miss. Code Ann. § 97-3-59 and states the following:

> Second, if you do not find the Defendant, TIMOTHY HOOPS, guilty of aggravated assault, you may consider whether he is guilty of the lesser crime of mayhem. To do so you must find from all the evidence and beyond a reasonable doubt that TIMOTHY HOOPS did with premeditated design or with intent to kill or commit a felony did mutilate, disfigure, disable or destroy the limb or member of any person. If you so find, you may find TIMOTHY HOOPS guilty of the crime of mayhem.

According to Hoops, the only difference between mayhem and aggravated assault is that mayhem does not require the use of a deadly weapon. Since mayhem does not specifically exclude the use of a deadly weapon, it should be interpreted to include such injury suffered with or without a deadly weapon. On this basis, Hoops posits that he was entitled to have the jury instructed on the crime of mayhem.

¶55. Hoops apparently believes that he is entitled to a mayhem instruction because under the facts of this case the jury could have found him guilty of both mayhem and aggravated assault. This is not the rule. Hoops is entitled to a lesser included offense jury instruction for mayhem as long as there is some proof that shows him to be innocent of aggravated assault, but at the same time only guilty of mayhem. *Haddox v. State*, 636 So. 2d 1229, 1238-39 (Miss. 1994) (citing *Toliver v. State*, 600 So. 2d 186, 192 (Miss. 1992); *Mackbee v. State*, 575 So. 2d 16, 23 (Miss. 1990)). The evidence in the instant case does not meet this criterion since the same proof that establishes aggravated assault also establishes mayhem.

¶56. This Court addressed a similar situation in *Rowland v. State*, 531 So. 2d 627, 631 (Miss. 1988). In that case, it was held that requesting such an instruction was tantamount to the State being limited to prosecution of the crime with the lesser penalty in situations where the accused was guilty of two crimes. In rejecting this rule this Court stated the following:

> The principle has, accordingly, evolved that the submission of a lesser degree of an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one. . . . The trial court **may not**, however, permit the jury to choose between the crime charged and some lesser offense where the evidence to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well. [Emphasis added]

*Rowland*, 531 So. 2d at 632 (quoting *People v. Mussenden*, 127 N.E.2d 551, 554 (N.Y. 1975) (emphasis added) (other citation omitted)). Hoops's claim concerning Jury Instruction D-9(a) must be rejected as well.

# VI.

## THAT SECTION 43-21-159 IS UNCONSTITUTIONAL IN THAT IT DOES NOT GRANT EQUAL PROTECTION TO MINORS WHO REACH THEIR EIGHTEENTH BIRTHDAY AFTER THE OFFENSE OF WHICH THEY HAVE BEEN ACCUSED BUT BEFORE THE DATE OF TRIAL.

¶57. The shooting took place on November 23, 1991, at which time Hoops was seventeen years old. At the time of sentencing, however, Hoops had become eighteen years of age. Hoops claims that the trial judge was precluded from sentencing him under Miss. Code Ann. § 43-21-159(3), a youthful offender statute, since he was no longer a child as defined by the legislature under the youthful offender laws. Presumably, Hoops is arguing that Miss. Code Ann. § 43-21-159 denies him equal protection because it treats him differently from others who were classified as a child when they committed a crime and were sentenced for that crime.

¶58. Miss. Code Ann. § 43-21-105 defines "child" and "youth" to mean a person who has not reached his or her eighteenth birthday. Under Miss. Code Ann. § 43-21-159(3), a child convicted by a circuit court may be sentenced, at the discretion of the trial judge, to one of the following: (1) a term of one year or less in the county jail, (2) suspension and release on probation, (3) committal to the Department of Corrections or, (4) imposition of a fine.[5] Contrary to Hoops's claim, the trial judge cannot remand the case to youth court for further proceedings as a sentencing alternative. A transfer to youth court may be made at any stage of the proceedings prior to the attachment of jeopardy. Miss. Code Ann. § 43-21-159(3).

¶59. Hoops takes less than one page of his brief to make a very general assertion that Miss. Code Ann. § 43-21-159 is unconstitutional. (Appellant's brief, p.17) (13 lines to be exact). He cites no authority for his proposition nor does he give any reasons as to why his position is a correct reflection of the law. He simply states that his Fourteenth Amendment rights have been denied because several sentencing alternatives under Miss. Code Ann. § 43-21-159 cannot be applied to him.

¶60. This Court's position concerning matters for appellate review is quite clear. "We require counsel to not only make a condensed statement of the case but, must also support propositions of law with reasons and authorities." *Pate v. State*, 419 So. 2d 1324, 1325-26 (Miss 1982) (citing *Dozier v. State*, 247 Miss. 850, 157 So. 2d 798 (1963); *Johnson v. State*, 154 Miss. 512, 122 So. 529 (1929); *Bridges v. State*, 154 Miss. 489, 122 So. 533 (1929)). As to constitutional challenges of statutes, we have held:

> With regard to the duties cast upon the assailant of a legislative enactment, the rule is fixed that a party who alleges the unconstitutionality of a statute has the burden of substantiating his claim and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped its power or has violated the Constitution must affirmatively and clearly establish his position.

*Touart v. Johnston*, 656 So. 2d 318, 321 (Miss. 1995) (citing *Van Slyke v. Board of Trustees*, 613 So. 2d 872, 880 (Miss. 1993) (other citation omitted)). Hoops alleges that Miss. Code Ann. § 43-21-159 is unconstitutional, yet he fails to take on the task of proving his allegation in order to clear the

procedural bar. This Court requires more.

¶61. Constitutional issues aside, Hoops's presumption that the trial judge did not consider Miss. Code Ann. § 43-21-159(3) as a sentencing alternative is without support. When considering alternative sentencing under Miss. Code Ann. § 43-21-159(3), a trial judge must consider the presence or absence of facilities for care of the offender in mitigation of the punishment and allow the defendant's counsel the opportunity to introduce such evidence. *Erwin v. State*, 557 So. 2d 799, 802 (Miss. 1990) (citing *May v. State*, 398 So. 2d 1331 (Miss. 1981)). The trial judge must also make specific findings as to the basis for his sentence and include those findings in the record along with the mitigation evidence previously discussed. *Id.*

¶62. Turning to the case at bar, this Court finds that the trial judge indeed considered the alternatives under Miss. Code Ann. § 43-21-159(3). First and foremost, the trial judge expressly told Hoops's counsel during Hoops's motion for a new trial that he considered the alternatives available when he sentenced Hoops.

¶63. The trial judge also allowed Mary Maxwell, a youth services counselor at the Jackson County Youth Court, to testify as a mitigation witness. Entered into evidence was a copy of Maxwell's transfer summary in which she recommended that Hoops be tried for the aggravated assault charge in the adult court system. Maxwell testified that the youth court had exhausted its resources in trying to rehabilitate Hoops. According to Maxwell, Hoops had been committed to the state training school at Columbia for accessory after the fact in an attempted armed robbery and murder. Hoops also had been sent to the state training school at Oakley on two separate occasions: once for trespassing and possession of burglary tools and once for contempt of court. Maxwell also testified that she believed the prosecution's recommended sentence of forty years (twenty years on each count to run consecutively) would not be beneficial to Hoops and that he should be in the Regimented Inmate Discipline program as that was all the adult system had to offer in the way of rehabilitation.

¶64. Finally, the trial judge noted on the record the reasons for his sentence. He stated the following:

> All right, the Court has listened to the evidence in regard to the case, listened to the numerous difficulties that both these gentlemen had over their short lifetime. [(See Transfer Summary)]. The Court does believe that they are survivors. I don't think they would have made it this far if they weren't survivors. The Court believes that over a long period of time the Youth Court has done everything that they could to help and assist these two young men. There are many many difficulties that they have had over their short lifetime. And it is not really a privilege or anything that I like to do in regard to sentencing young people. I always try to use the RID program when I have an opportunity to do it for young people. But I don't think that the RID program would be appropriate for these two young men who have had many and numerous difficulties. So the Court is going to sentence both Mr. Ronnie Anderson and Mr. Timothy Hoops to serve fifteen (15) years on each count, and the counts will run consecutively.

¶65. Considering that the trial judge employed the requirements as set out in *Erwin*, *supra* and *May*, *supra*, Hoops's contention that he was denied sentencing under Miss. Code Ann. § 43-21-159(3) is not well taken; therefore, this issue fails to merit reversal by this Court.

**VII.**

## THAT THE APPELLANT WAS GIVEN A SENTENCE WHICH WAS DISPROPORTIONATE TO ALL OTHER SENTENCED FOR AGGRAVATED ASSAULT IMPOSED IN JACKSON COUNTY AT THAT TIME.

¶66. At sentencing, the State recommended that Hoops receive two consecutive twenty year sentences for his conviction. According to Hoops, he had been offered a plea bargain of ten years on each count, with each sentence to run concurrently, in exchange for a guilty plea. The trial judge, after hearing testimony from Hoops's youth court counselor, sentenced Hoops to two consecutive fifteen year sentences. Hoops now asserts that the State sought the imposition of the maximum sentence allowable because he exercised his right to trial. He arrives at this conclusion by alleging that the sentence is disproportionate in comparison to other sentences for aggravated assault in Jackson County.[6]

¶67. The State argues that Hoops is procedurally barred because he failed to cite any authority to support his proposition. *McClain*, *supra*. Without waiving the bar, the merits of Hoops's claim fail to withstand scrutiny.

¶68. Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute. *Reynolds v. State*, 585 So. 2d 753, 756 (Miss. 1991) (citing *Reed v. State*, 536 So. 2d 1336, 1339 (Miss. 1988); *Boyington v. State*, 389 So. 2d 485 (Miss. 1980)). "Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992) (citing *Corley v. State*, 536 So. 2d 1314, 1319 (Miss. 1988); *Reed v. State*, 536 So. 2d 1336, 1339 (Miss. 1988)). Proportionality review of sentences is required, however, in particular situations.

¶69. This Court has used the three-pronged analysis as set forth by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 292 (1983), to review the proportionality of certain sentences. *See Fleming*, 604 So. 2d at 302-03; *Clowers v. State*, 522 So. 2d 762, 764 (Miss. 1988); *Davis v. State*, 510 So. 2d 794, 797 (Miss. 1987); *Presley v. State*, 474 So. 2d 612, 618 (Miss. 1985). *Solem*, however, was overruled in *Harmelin v. Michigan*, 501 U.S. 957, 965-66 (1991), to the extent that it found a guarantee of proportionality in the Eighth Amendment. *Smallwood v. Johnson*, 73 F.3d 1343, 1346 n.4 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 315-16 (5th Cir. 1992), *cert. denied*, 506 U.S. 849 (1992). "In light of *Harmelin*, it appears that *Solem* is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality.'" *Smallwood*, 73 F.3d at 1347 (citing *Harmelin*, 501 U.S. at 1005).

¶70. *Rummel v. Estelle*, 445 U.S. 263, 265-66 (1980), serves as a guide in the determination of this threshold comparison. *McGruder*, 954 F.2d at 317; *Smallwood*, 73 F.3d at 1347-48. The defendant in *Rummel* was sentenced to life in prison with the possibility of parole under a recidivist statute for a third non-violent felony conviction. Although the total loss from the three crimes was less than $250.00, the United States Supreme Court found Rummel's sentence to be proportionate and not violative of the Eighth Amendment.

¶71. In light of *Rummel*, it cannot be argued that Hoops's sentence was grossly disproportionate to his crime. Like Rummel, Hoops maintains a possibility of parole, but unlike Rummel, who was

sentenced to life, Hoops was sentenced to a total of thirty years at an age of eighteen. Although Hoops was not sentenced under a recidivist statute, the quality of his crime is certainly as egregious as Rummel's three non-violent crimes which netted him a paltry sum of approximately $250.00. The jury found Hoops guilty in shooting two people, apparently for no other reason than they were in a rival street gang. To be sure, this is a serious act of violence. The trial judge was statutorily empowered to sentence Hoops to twenty years on each count, but he did not. On balance, these facts do not lend themselves to a finding that Hoops received a sentence grossly disproportionate to his crime; therefore, an extended proportionality review under *Solem* is not warranted. This Court finds no error.

## CONCLUSION

¶72. Hoops's appeal contains seven assignments of error, many of which are not supported by any authority or appropriate argument. In fact, Hoops only cites to four cases and to two statutes in his brief. These issues should be procedurally barred. Notwithstanding the bar, none of Hoops's errors require reversal. Issue I: The evidence fails to show that the trial judge specifically targeted Hoops in his charge to the grand jury. Issue II: Hoops failed to comply with the requirements of Miss. Code Ann. § 99-15-35 in order to properly support his motion to change venue. Issue III: The allegedly damaging testimony of Lorenzo Bell was invited by Hoops's questions during cross-examination, and the trial judge admonished the jury to disregard the remarks. Issue IV: Evidence of Hoops's affiliation with gangs was admissible to show motive in the shooting and was not substantially more prejudicial than probative. Issue V: Jury Instruction S-2 was properly given by the trial judge because it was an aiding and abetting instruction, while Jury Instructions D-8(a) and D-9(a) were properly refused by the trial judge because they were not appropriate lesser offense instructions. Issue VI: The trial judge, in fact, considered the sentencing alternatives under the youthful offender statutes in determining Hoops's sentence. Issue VII: Hoops did not receive a sentence that is disproportionate to the crime he committed.

**¶73. COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**

1. Prior to this motion, Timothy Tait, a defendant in a capital murder case, had attempted to quash his indictment based upon the same comments made by Judge Jones in his supplemental charge to the April 1992, Jackson County Grand Jury. A hearing was held to review the supplemental charge and determine if Judge Jones had abused his discretion. (State's Exhibit 1). Judge Jones testified at this hearing. (State's Exhibit 1, pp. 10-34). Upon hearing all of the evidence, the trial court found that Judge Jones had not manifestly abused his discretion in issuing his supplemental charge to the grand

jury. (State's Exhibit 1, p. 53).

2. There is no motion to quash the venire in the court papers. Counsel for Hoops claims that the trial judge heard this motion on October 23, 1992; however, there is no record cite to this motion in Hoops's brief and this Court is unable to find in the record where that specific motion was argued during that hearing. There is a possible reference to such a request on page 29 of the trial transcript.

3. *See also Heidel v. State*, 587 So. 2d 835, 845 n.8 (Miss. 1991) (clarifying *Jenkins* as to its Rule 403 and 404(b) holding).

4. During the hearing for Hoops's motion for a new trial, Hoops's counsel told the trial judge that S-2 was "vague and misstated the law in its statement of consenting, encouraging and assisting."

5. Miss. Code Ann. § 43-21-159 was amended in 1994 so that any youth convicted by a circuit court shall be sentenced as an adult. Miss. Code Ann. § 43-21-159(4).

6. Hoops states in his brief that his allegations are supported by exhibits to his supplemental motion for a new trial. That motion was not made a part of the court papers for this appeal. Hoops also fails to assign a record cite to that motion.