784 So.2d 230 (2000)
Edward Earl WILLIAMS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01004-COA.
Court of Appeals of Mississippi.
November 21, 2000.
Rehearing Denied February 20, 2001.
Certiorari Denied May 10, 2001.
*233 Ross Parker Simons, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., IRVING, AND PAYNE, JJ.
IRVING, J., for the Court:
¶ 1. Edward Earl Williams was convicted of two counts of aggravated assault and sentenced as a habitual offender to twenty years on each count, said sentences to run consecutively. Williams has filed this appeal and contends (1) that the trial court erred in refusing to grant a mistrial after the victim testified that she was pregnant when she was shot by Williams, (2) that his sentence constitutes cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution and Article 3, Section 28 of the Mississippi Constitution of 1890, (3) that he was punished to the maximum possible sentence because he chose to go to trial rather than plead guilty, and (4) that the evidence is insufficient to support his sentence as a habitual offender. Finding no reversible error, we affirm.

FACTS
¶ 2. Edward Earl Williams entered the Food World Store in Pascagoula armed with a loaded pistol. He engaged in conversation with April Hanshaw, a bookkeeper for Food World, and Billy Ray Jackson, manager of Food World. By his own admission, Williams, who had been dating Hanshaw, became angry and frustrated during the conversation and fired a shot at Jackson. Fortunately for Jackson, Williams missed his mark, and Jackson was not struck by the gunfire. Williams then fired a shot at Hanshaw which struck her in the left buttock as she tried to flee. Williams then ran from the store firing several more shots as he left. Williams later hid the pistol and fled to Clarksdale. The gunshot injury to Hanshaw required major surgery to repair her large and small intestines and severed ureter.
¶ 3. April Hanshaw and Billy Ray Jackson both testified during the trial and identified Williams as their assailant. During Jackson's testimony, a videotape of the shooting from the store's security camera was played for the jury.
¶ 4. Williams took the stand in his own defense and testified that April Hanshaw had been his girlfriend but that she had recently broken off the relationship. Williams admitted that he was angry about the breakup, and that the shooting was the result of his anger and frustration over his failed relationship with Hanshaw.

Analysis of Issues Presented

I(a). Was April Hanshaw's Testimony That She Was Pregnant at the Time She Was Shot Prejudicial and a Violation of URCCC 9.04?
¶ 5. Williams claims the trial court committed reversible error in denying his request for a mistrial after Hanshaw testified during direct examination that she was a week pregnant at the time she was shot by him. The record reveals that the fact of Hanshaw's pregnancy was revealed to the prosecution within the context of the victim impact statement and was not solicited at trial by the prosecution. It is also clear from the record that the testimony about the pregnancy was inadvertent, uninvited, and unresponsive to the prosecution's inquiry. The prosecutor had simply asked the victim to describe her injuries and in the process of describing her injuries Hanshaw brought out the fact of her pregnancy. The trial court found as follows:
All right. Well, I've considered it and I don't think it's grounds for a mistrial *234 either, the mere fact that she was pregnant, especially in light of the fact that nobody knew she was pregnant. She didn't know she was pregnant. The doctors didn't know she was pregnant. Obviously, the defendant didn't know she was pregnant. No one knew she was pregnant.
Now, to this Court, the only way it would be prejudicial is if she had lost the baby because of the gunshot wound and that came out in the middle of the trial. Now, that would be highly prejudicial. That's why, when I came in the courtroom, it was my opinion that to tell the jury to disregard it right now, I think, leaves the juryif they heard what I heard, they're not sure whether the baby was all right or not. I think the jury needs to know that she carried this baby full term without any complications, and then leave it alone, unless it may become relevant at some point.
¶ 6. The decision to declare a mistrial is within the sound discretion of the trial judge. Evans v. State, 725 So.2d 613, 649 (Miss.1997); Brent v. State, 632 So.2d 936, 941 (Miss.1994). Upon any appeal from a denial of mistrial, the judge's reasons as stated for the record will be accorded the greatest weight and respect by an appellate court. Jones v. State, 398 So.2d 1312, 1319 (Miss.1981). The reviewing court recognizes that the trial judge is in the best position to determine whether an objectionable remark has had any prejudicial effect. Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990); Alexander v. State, 520 So.2d 127, 131 (Miss.1988). For this reason, the trial court is allowed considerable discretion in determining whether a remark was so prejudicial that it warrants a mistrial. Id. Under the facts and circumstances of this case, we do not find any abuse of discretion in the trial court's denial of Williams's motion for a mistrial.
¶ 7. Williams also charges that the State's failure to tender the evidence of Hanshaw's pregnancy, which it had in its possession for more than a year, constituted a discovery violation under URCCC 9.04 and an evidentiary ambush on his defense. Rule 9.04 of the Uniform Circuit and County Court Rules sets forth the appropriate procedure and remedies for the trial court to consider in resolving discovery violations. The rule provides that if a "party has failed to comply with an applicable discovery rule ... the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances." URCCC 9.04(I). In the case at bar, the judge ordered an overnight recess in order to give Williams additional time to prepare his cross-examination of Hanshaw. The next morning Williams proceeded with cross-examination without requesting any additional time. Under these circumstances, we find that the trial court acted within its discretion and within the confines of URCCC 9.04(I) in its ruling on this matter.
¶ 8. Williams argues further that had he known of Hanshaw's pregnancy he would have used this information to voir dire the jury on the issue of prejudice regarding the shooting of a pregnant woman. Not having this information, Williams claims, denied him the right to question potential jurors on the issue, or strike, by peremptory or cause, those identified as being fatally prejudiced by the information. Williams claims that when the trial court forced him to carry on with his trial before a jury, which was oblivious to this information on voir dire but was informed of it once in the jury box, caused him to be *235 "insurmountably prejudiced, without a means to correct the problem." This Court disagrees. The evidence of Hanshaw's pregnancy was not relevant to any of the issues involved in the trial, and Williams's contention that he was insurmountably prejudiced by not being able to voir dire veniremen on this point is dependent upon proof that one or more members of the jury panel would have been affected by this information. That is pure speculation.

I(b). Did the Trial Court Err in Its Application of Rules 401, 402 and 403?
¶ 9. Williams claims error in the trial court's ruling on the application of Mississippi Rules of Evidence 401, 402 and 403 to the issue of the pregnancy testimony. He contends that this evidence is only admissible if it is relevant, and without a threshold finding of relevance, the trial court should not have admitted it. He goes on to argue that it was an exercise in futility for the trial court to make a determination regarding whether the evidence had probative value, since the evidence was inadmissible under the relevancy test. Williams claims that while the trial court was already in error by not determining relevance/admissibility, it went on to commit further error by "leapfrogging to the also erroneous conclusion that Williams had suffered no prejudice from this evidence."
¶ 10. Williams's argument on this point centers on the trial court's focus or rationale in denying the mistrial. As stated, the trial court concluded that a mistrial was not warranted but that the jury needed to be made aware that the unborn child had not been harmed by the gunshot that Hanshaw received. It was the trial court's opinion that if the gunshot had injured Hanshaw's unborn child, the jury might be disposed to bias against Williams. To eliminate this possibility of bias, the trial judge advised the prosecution and the defense that he wanted the jury to know that the unborn child had not been harmed but left it up to the prosecution and the defense to determine how best to accomplish that task which was accomplished by the prosecutor asking the appropriate questions of Hanshaw before the jury. This, in our opinion, does not constitute an admission of either irrelevant evidence under M.R.E. 402 or relevant but prejudicial evidence under M.R.E. 403. It was simply a procedure for curing the potential prejudice which might have emanated from Hanshaw's unsolicited comment about her pregnancy.

II. (a & b) Sentencing Constitutes Cruel and Unusual Punishment and Is Disproportionate under the Eighth Amendment
¶ 11. Williams contends that his forty-year sentence constituted cruel or unusual punishment and was disproportionate to the offense, all in violation of the Eighth Amendment to the Constitution of the United States and the Constitution of Mississippi. Williams also claims that his punishment is undoubtedly unusual because he received a sentence well beyond the norm of those imposed for like crimes in his own community and the neighboring communities.
¶ 12. The imposition of a sentence is within the discretion of the trial court, and appellate courts will not review the sentence, if it is within the limits prescribed by statute. Reynolds v. State, 585 So.2d 753, 756 (Miss.1991). Mississippi Code Annotated § 97-3-7(2) (Rev.2000) provides a maximum of twenty years for aggravated assault. The trial court stated its reasons for ordering the maximum penalty as follows:
[T]here are few crimes I can imagine that, to me, are more serious than going *236 into a public place with a loaded gun and shooting at people. And, as Ms. Bradley just stated, you got on the witness stand and told the Court and the jury that you did make a conscious decision, once you realized you missed your first victim, to shoot the second one. I don't know of a crime that's any more serious than that. It's a wonder one of these people is not dead, or both. I guess it's your good fortune, as well as theirs, that this wasn't more serious than it turned out to be or that somebody wasn't killed.
¶ 13. The Mississippi Supreme Court has previously ruled that the twenty year maximum set by § 97-3-7(2) does not constitute cruel and inhuman treatment per se. Fleming v. State, 604 So.2d 280, 302 (Miss.1992) (citing Adams v. State, 410 So.2d 1332, 1333-34 (Miss.1982)). "Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." Fleming, 604 So.2d at 302 (citing Corley v. State, 536 So.2d 1314, 1319 (Miss.1988); Reed v. State, 536 So.2d 1336, 1339 (Miss.1988)). A sentence is subject to review, however, where it is alleged that the penalty imposed is disproportionate to the crime charged. Fleming, 604 So.2d at 302 (citing Ashley v. State, 538 So.2d 1181, 1184-85 (Miss.1989); Davis v. State, 510 So.2d 794, 797 (Miss.1987); Presley v. State, 474 So.2d 612, 618 (Miss.1985)). That is the allegation made by Williams here.
¶ 14. In Hoops v. State, 681 So.2d 521, 538 (Miss.1996), our supreme court addressed the proportionality of a sentence under the Eighth Amendment pursuant to the three pronged analysis found in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Solem, however, has been limited by the United States Supreme Court in Harmelin v. Michigan, 501 U.S. 957, 991-92, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), wherein the Supreme Court held that absent a punishment which falls outside the bounds of those traditionally implemented under the old Anglo-Saxon system, the realm of proscribing punishment is generally left to the various states.
¶ 15. The Mississippi Supreme Court in Hoops determined that Harmelin makes clear that the three prong analysis of Solem "is to apply only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality.'" Hoops, 681 So.2d at 538 (citing Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir.1996)). Absent this initial showing, our appellate courts will not employ the three-prong Solem analysis. Young v. State, 731 So.2d 1120, 1125 (Miss.1999).
¶ 16. Williams offered a supplement to the record and affidavit tending to indicate that his sentences are disproportionate to sentences meted out in Jackson and Harrison counties in Mississippi and Mobile County in Alabama for like crimes. However, as stated, Hoops requires us to look first at the question of whether an inference of disproportionality may be drawn from a comparison of the crime committed to the sentence meted out. This necessarily requires us to focus first, as we should, on the nature of the crime committed. We now turn to that role, but before we do, we need to address briefly Williams's effort to supplement the record as aforesaid.
¶ 17. Williams filed with the Mississippi Supreme Court a motion to supplement the record to show the statistics alluded to in the previous paragraph. Justice Kay B. Cobb remanded the motion to the trial court for consideration. The trial court, in compliance with the order of remand, reviewed the documents contained in the supplement and concluded that "sentences handed down for other aggravated *237 assault crimes by other judges and other courts outside this jurisdiction [were] not relevant and [Williams's] motion to supplement should be denied." We affirm the trial judge's decision on this point, for, as discussed in the following paragraph, we hold that a comparison of the crime to the sentence imposed does not lead to an inference of gross disproportionality. Therefore, the statistics, contained in Williams's supplement, are irrelevant. They become relevant only after an initial finding of an inference of gross disproportionality.
¶ 18. In this case Williams assaulted two individuals with a loaded firearm by firing at and missing one of those individuals and striking and seriously injuring the other. We agree with the trial judge that there are few crimes imaginable that are more serious than going into a public place with a loaded gun and shooting at people. Williams points to the fact that no one was hurt in the first instance, yet he received the same sentence for that assault as he did for the one in which the person was injured. We are not persuaded that that fact makes his crime any less serious.
¶ 19. The statutory maximum sentence for each assault is twenty years. As stated previously, and as the Mississippi Supreme Court has said on countless occasions, "So long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion." Green v. State, 631 So.2d 167, 176 (Miss.1994). We find no abuse of discretion in the trial court's sentencing of Williams. Furthermore, the court acted well within its discretion in deciding to impose the two sentences consecutively as expressly authorized by Miss.Code Ann. § 99-19-21(1) (Supp.1997). See Armstead v. State, 503 So.2d 281, 285 (Miss.1987).

III. Was Williams Given the Maximum Sentence for Choosing to Stand Trial?
¶ 20. Williams charges that he was punished with the maximum sentence possible because he chose to exercise his constitutional right to trial by jury rather than entering a plea of guilty to the charges in exchange for a lesser sentence. A trial court is prohibited from imposing a heavier sentence because the defendant has exercised his constitutional right to trial by jury than that which was offered the defendant in the plea bargaining process. Temple v. State, 498 So.2d 379, 381 (Miss.1986). However, where the record reflects that the court remained aloof from the bargaining process or was unaware of the bargaining, the court does not err in sentencing the defendant to a greater sentence than that which was offered in the plea bargaining process. Id. at 382. Additionally, the court does not abuse its discretion in imposing a heavier sentence if the record reveals that the sentence was based on a pre-sentence report and prior convictions. Gillum v. State, 468 So.2d 856, 864 (Miss.1985).
¶ 21. Prior to trial, the State offered Williams a plea bargain. In exchange for pleas of guilty by Williams on both counts, the State offered to recommend a sentence of fifteen years. Williams rejected the offer and elected to proceed to trial. At the close of the sentence-determination or habitual offender phase of the bifurcated trial, and immediately prior to sentencing, the following colloquy between Williams's defense counsel and the circuit judge took place:
BY MR. SIMONS: Just a couple of things, Judge. I'd like to introduce, Judgeand I don't think there will be any objection to thistwo recommendations letters I received from the State prior to trial in this case. And one of *238 those was one day or one working day prior to the trial. One was delivered on 4-16-99, when the trial was set for 4-19-99.
(Letter was marked into evidence as Exhibit D-1)
(Recommendation Letter was marked into evidence as Exhibit D-2.)
BY THE COURT: Well, youthere's no question I had nothing to do with those and didn't know anything about any recommendation prior to the trial.
* * * * * *
BY THE COURT: All right. Mr. Williams, will you please stand with your attorney. First of all, the Court does find from the evidence I've been presented this morning that you are a habitual offender and that you have been convicted two times prior to this, in this jurisdiction. So I do find that you are a habitual offender and should be sentenced accordingly.
Mr. Williams, I want it clear for the record this Court had nothing to do with any prior plea negotiations. Didn't know anything about any prior plea negotiations. I started this trial on Monday and I listened to the testimony, basically fresh, because I didn't know a lot about the case other than a small blurb I had read about it. I wasn't even in town when it happened. So, I wasn't here when the whole think hit the newspaper. But I had read one short something in the newspaper concerning it. So, I know [sic] nothing about the case until I heard it last Monday and Tuesday of this week.
¶ 22. In spite of Williams's claim that he was punished with the maximum sentences only because he elected to proceed to trial by jury rather than pleading guilty to his crimes, we find that the record clearly reflects that the trial court's basis for imposing the maximum consecutive sentences was the gravity of the offenses and Williams's lack of remorse.

IV. Is the Evidence Sufficient to Support a Finding That Williams Is an Habitual Offender?
¶ 23. Williams claims there was insufficient evidence to demonstrate to the circuit judge that he was an habitual offender. Williams contends that none of the witnesses at the habitual offender hearing offered sufficient proof beyond a reasonable doubt that he was in fact the same Edward Williams who was convicted of commercial burglary in 1992 and possession of a controlled substance in 1994. This Court disagrees.
¶ 24. The record reflects that the State's proof was legally sufficient to demonstrate that the defendant in the case at bar and the Edward Earl Williams who was convicted in the Circuit Court of Jackson County of burglary and larceny in 1993 and who, a year later in 1994, was convicted again in the Circuit Court of Jackson County of the possession of a controlled substance, are one and the same. This Court has reviewed the papers submitted by Barbara Bailey, records custodian at the State Penitentiary, and finds that the biographical information, fingerprint cards and the mug shot photograph of Edward Earl Williams made during the process of his drug conviction, are proof positive that the Edward Earl Williams in the case at bar is the same Edward Earl Williams previously convicted of burglary and larceny and possession of crack cocaine.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF TWO COUNTS OF AGGRAVATED ASSAULT AS AN HABITUAL OFFENDER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT *239 OF CORRECTIONS ON EACH COUNT WITH SENTENCES TO RUN CONSECUTIVELY WITHOUT BENEFIT OF PROBATION OR PAROLE IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.