999 So.2d 1281 (2009)
Timothy B. WILLIAMSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01719-COA.
Court of Appeals of Mississippi.
January 20, 2009.
Jerry Campbell, Vicksburg, attorney for appellant.
Office of the Attorney General By: Ladonna C. Holland, attorney for appellee.
EN BANC.
KING, C.J., for the Court.
¶ 1. Timothy B. Williamson was convicted of the aggravated assault upon a man in the parking lot of a popular Ridgeland, Mississippi restaurant and bar and was sentenced to twenty years in the custody of the Mississippi Department of Corrections with twelve years to serve and five years of post-release supervision.
¶ 2. From this conviction and sentence, Williamson appeals raising two issues for our review:
I. THAT THE DEFENDANT WAS UNFAIRLY SURPRISED AND UNDULY PREJUDICED BY THE STATE'S FAILURE TO DISCLOSE THE NAME OF A WITNESS, JAMES BOYD MCGRAW, WHO WAS OFFERED *1282 BY THE PROSECUTION AT TRIAL
II. THAT THE STATE'S FAILURE TO DISCLOSE THE NAME OF A WITNESS, JAMES BOYD MCGRAW, SUBSTANTIALLY PREJUDICED THE DEFENDANT IN HIS PLEA BARGAIN NEGOTIATIONS
¶ 3. Finding no error in the proceedings below, we affirm.

FACTS
¶ 4. Brian Canton was a bartender at The Dock restaurant and bar at the Ross Barnett Reservoir in Ridgeland. On April 12, 2003, he arrived at work to begin an 8:00 p.m. shift. After pulling into the parking lot, he walked around to the passenger side of his truck to retrieve his backpack and a cell phone. At that point he caught sight of someone crouching down near him just looking at him; at trial, he identified the person as the defendant, Williamson. Canton turned back to his truck, closed his door, and hit the key lock. Then he said he heard someone yell and after that things became "fuzzy" because he had been hit in the face by Williamson. "I heard someone yell hey, and then when I came to, I was getting kicked, or felt like I was getting kicked against the tire ... and my head was being pushed into the tire with some blows to my back and neck," Canton said. A patron at a nearby restaurant, James Boyd McGraw, was having dinner with his wife when he observed the altercation. He said he first heard loud talking, then he heard someone say, "Hey m* * * * *f* * * *r what are you doing in my truck.... Are you breaking into my truck[?]" He said the man who was identified as Canton replied that he was not breaking into Williamson's truck, but he was getting something out of his own truck. McGraw, who was an off-duty highway patrol officer, said he never saw Canton in an offensive position; instead, he said Canton was walking backwards with his hands up when Williamson struck Canton. McGraw testified that Canton fell on his back and Williamson continued to strike Canton in the face. At that point McGraw said he told someone to call the police, and he went downstairs with some bouncers to approach the scene. Williamson fled the scene in his truck with a friend, but he was stopped not far from The Dock by a Ridgeland policeman, Joe McNamee, who had heard about the incident, saw blood on Williamson's knuckles, and brought Williamson back to the scene.
¶ 5. As a result of the assault, Canton had to undergo three surgeries to repair his broken nose, which had shifted and caved in. Canton's facial plastic surgeon, Dr. Adair Blackledge, testified about the care Canton needed as a result of the assault. When the doctor first saw Canton, he said that Canton's nose almost formed a C-shaped curve on his face. He said Canton's entire nose was shifted over, and he could not breathe out of one side of his nose. The doctor estimated that he had about a fifteen percent airway. The doctor said Canton also had bone fractures over his cheekbone. Canton's injury required the surgeon to perform rhinoplasty on Canton by re-breaking the nose and shifting it back over to the midline and then reconstructing the inside of Canton's nose. The septum of the nose had to be surgically moved back to the middle. Dr. Blackledge said that the assault knocked out some fragments of bone from Canton's nose which could not be replaced. Dr. Blackledge said that the two surgeries he performed on Canton brought his nose back to about eighty percent of what it was before the assault. The doctor said that Canton would be permanently disfigured and would also continue to have nasal breathing problems.
¶ 6. Williamson admitted that he struck Canton in the face with his fist. His version *1283 of events leading up to the assault differed markedly from that of other witnesses. Williamson, who is from Moselle in Jones County, said he and a group of friends had been fishing at the Reservoir since about 11:00 a.m. and went to the Dock around 7:00 p.m. to eat and drink. He said that as he exited the restaurant around 8:00 p.m. and walked toward his truck, he saw the tool box on the back of his truck open, and he saw a man standing at what he thought was the back of his truck. He said he walked up to the man and said, "hey man what were you doing in my truck[?]" Williamson denied cursing at Canton. Williamson said Canton responded by slamming the door of his truck, which was between them, and saying that he had not been in his "f* * *ing truck," and then Canton pushed him. Williamson said he reacted by hitting Canton once across the bridge of his nose, and then Canton fell to the ground. Williamson denied hitting Canton while Canton was on the ground and said he even tried to assist Canton to his feet.
¶ 7. The jury returned a verdict of guilty of aggravated assault against Williamson, and the court sentenced him to twenty years in the custody of the Mississippi Department of Corrections, with twelve years to serve and five years of post-release supervision. The court denied post-trial motions, and this appeal ensued.
I. THAT THE DEFENDANT WAS UNFAIRLY SURPRISED AND UNDULY PREJUDICED BY THE STATE'S FAILURE TO DISCLOSE THE NAME OF A WITNESS, JAMES BOYD MCGRAW, WHO WAS OFFERED BY THE PROSECUTION AT TRIAL
II. THAT THE STATE'S FAILURE TO DISCLOSE THE NAME OF A WITNESS, JAMES BOYD MCGRAW, SUBSTANTIALLY PREJUDICED THE DEFENDANT IN HIS PLEA BARGAIN NEGOTIATIONS
¶ 8. Both of Williamson's assignments of error center around the fact that witness, James Boyd McGraw, was not disclosed during pretrial discovery. In his brief, Williamson combines his arguments on both points. Therefore, we will discuss them together.
¶ 9. The fact that McGraw had witnessed the crime and had given a statement to the Ridgeland police came to light during the trial. The prosecutor had received testimony from McNamee, the Ridgeland police officer who had investigated the incident. The court then recessed for a break. After the recess, the assistant district attorney advised the court that Officer McNamee had asked him during the recess where was McGraw. After the assistant district attorney told him he did not know who he was talking about, Officer McNamee showed the prosecutor a report that said that after the incident, Canton found out that an off-duty highway patrolman, who was eating at the Island Grill near the Dock, had witnessed the episode. The police in 2003 tracked down McGraw and found that he was on military duty in Iraq. The police contacted McGraw via e-mail and asked if he had any information about the incident. He replied that he witnessed the assault, and he gave a statement via e-mail of what he had observed. For some reason undisclosed by the record, the district attorney's office was not made aware of the statement until Officer McNamee's inquiry about McGraw's presence on the day of the trial.
¶ 10. Williamson's attorney objected to the introduction of the statement and to McGraw testifying, as the existence of McGraw had not been made known to the defendant prior to trial. The trial was held in 2007, and by this time McGraw had returned from Iraq. The Ridgeland police were able to locate him in Clinton on the afternoon of the trial. At the request of *1284 the trial judge, McGraw was told to report to the Madison County Circuit Court by 4:30 p.m. that day so that both the defense and the State could interview him. McGraw did come to Canton, Mississippi and was interviewed by both the defense and the prosecution. After learning of McGraw, the trial court allowed the State to call one additional witness and then adjourned for the day to give the defense more time to investigate the newly discovered evidence.
¶ 11. Both sides interviewed McGraw. The next morning at trial the defense claimed unfair surprise and undue prejudice because it was not allowed to investigate McGraw's credibility. One of the defense attorneys said that he was aware prior to trial that there was a highway patrolman in the vicinity of the incident, but he did not investigate the information and relied on the State's discovery which did not show that the highway patrolman was going to be called as a witness. The defense asked that either McGraw not be allowed to be called as a witness or that the court grant Williamson a continuance. The court denied both requests.
¶ 12. Williamson cites Rule 9.04(A) of the Uniform Rules of Circuit and County Court, which provides that the prosecution must disclose to the defendant the names and addresses of all witnesses in chief that the prosecution intends to call at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness, and the substance of any oral statement made by such witness. Further Williamson argues that the trial court erred by not granting a continuance once the existence of McGraw was made known. He cites Rule 9.04(I) of the Uniform Rules of Circuit and County Court, governing discovery violations, and argues that he should have been granted a continuance once the existence of McGraw was discovered. Williamson cites language from Justice Robertson's specially concurring opinion in Box v. State, 437 So.2d 19, 25 (Miss.1983), which admonishes the State to take its obligation to conform to discovery seriously. "The [S]tate ought not be heard to say `we only discovered this evidence last night,' or `the defendant should have known about this witness all along anyway' or, `this evidence is merely cumulative or corroborative,' or the like." Id.
¶ 13. The State admits there was a discovery violation by it not divulging McGraw's name and proposed testimony prior to trial, but it argues that the trial judge acted within his discretion in handling the evidence that was disclosed.
¶ 14. After the assistant district attorney advised the court of the existence of McGraw and of McGraw's probable testimony, the trial court was faced with how to handle the admitted discovery violation. Rule 9.04(I) sets out the procedures a trial judge should follow when it is brought to the court's attention during the trial that the prosecution is attempting to introduce evidence which was not disclosed to the defense. Under the rule, the court shall grant the defense a reasonable opportunity to interview the newly discovered witness and to examine the newly produced documents. URCCC 9.04(I)(1). If after such opportunity the defense claims unfair surprise and undue prejudice and seeks a continuance or mistrial, "the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial." URCCC 9.04(I)(2).
¶ 15. Our supreme court has held that trial judges have wide latitude in deciding whether to grant continuances, and that the decision whether to do so is left to the sound discretion of the trial judge. *1285 Morgan v. State, 741 So.2d 246, 255(¶ 26) (Miss.1999). "Denial of a continuance is not reversible unless manifest injustice appears to have resulted from the denial." Adams v. State, 772 So.2d 1010, 1014(¶ 16) (Miss.2000). Further, the supreme court "has ruled that a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice." Wyatt v. City of Pearl, 876 So.2d 281, 284(¶ 10) (Miss.2004).
¶ 16. Turning to our case, we find that once the State learned of the undisclosed witness, it apprised the trial court and the defense. After discussing the issue with both parties and hearing the objection of the defense, the trial judge gained assurance from the prosecution that the witness, McGraw, would appear at the courthouse that same afternoon so he could be interviewed by both parties. The court then took brief testimony from a prosecution witness and then adjourned for the day. This decision resulted in giving the defense an overnight recess in which to interview the witness and prepare its questioning of the newly discovered witness and to scrutinize McGraw's e-mail statement. Such a procedure was approved by our Court in Williams v. State, 784 So.2d 230, 234(¶ 7) (Miss.Ct.App.2000). There the victim of a shooting volunteered without being asked during her questioning by the State that she was pregnant at the time of the shooting. Id. at 233(¶ 5). The defense objected and asked for a mistrial claiming that the State had failed to disclose the fact that the victim was pregnant at the time of the shooting. After the testimony was elicited, the trial judge ordered an overnight recess in order to give the defendant additional time to prepare his cross-examination of the witness. Id. at 234(¶ 7). The next morning the victim was cross-examined. Id. We upheld the trial court's handling of the discovery issue. Id. In Foster v. State, 484 So.2d 1009, 1011 (Miss.1986), the court held that while a defendant may be entitled to a continuance of the proceedings to review undiscovered evidence, "[b]y no means does this mean invariably that the defendant will be entitled to a continuance until the next term of court. There will no doubt be cases where postponement of a day or two, or in some cases even an hour or two, will suffice."
¶ 17. We find that the trial court did not abuse its discretion in handling the discovery violation. It was undisputed that the district attorney's office did not know of the witness, McGraw, until trial. McGraw was then immediately located and brought to court in advance of his testimony and interviewed by the defense while the trial was recessed for the day. The defense then had overnight to prepare for its cross-examination of McGraw. Prior to McGraw's testimony the trial judge asked the jury if anyone knew McGraw, and no one did. The defense had argued that it was prejudiced because it was not allowed to check on McGraw's credibility. After the jurors were questioned about knowing McGraw, the trial judge excused them so that the defense could question McGraw relative to his credibility. The defense refused to do so. The court then questioned McGraw about his credibility asking about his age, experience, education, and background. The questions elicited that McGraw was a former United States Marine Corps sergeant who had at one time been stationed at the United States Embassy in London where he had national security clearance, and who then became a Mississippi Highway Patrol trooper for five years, and was deployed to Iraq in 2003 as a member of the Mississippi National Guard until 2005. Following his return from Iraq, he became employed full time as a captain in the Army National Guard. The defense then requested that the jury be questioned regarding whether it would give more or less weight to *1286 McGraw's testimony because he was in the military. The jury was brought back in, and when questioned by the court, the jurors responded that McGraw's military status would not affect their opinion.
¶ 18. The defense admitted that it knew of the existence of a highway patrolman in the vicinity of the assault but elected not to pursue interviewing him. The defense also admitted that the prosecutor had not deliberately withheld the name of the witness, McGraw, from the defense. When knowledge of the witness came to the trial judge's attention, he arranged for the witness to be made available within a few hours of learning of him and then adjourned the trial early to allow the defense to interview the witness, which the defense did. The shortened trial day and overnight period were certainly longer that the one to two hours the court in Foster suggested would be adequate to review undiscovered evidence. The next morning the defense objected to McGraw's testimony arguing that while it had had an opportunity to interview McGraw, it had not had an opportunity to check McGraw's credibility. The trial judge excused the jury, put McGraw on the stand and asked the defense if it wished to question McGraw regarding his credibility. The defense declined. However, the trial judge himself questioned McGraw extensively about his background and credentials. When the trial judge's actions are considered as a whole, we find that the judge handled an unexpected trial issue in a manner consistent with the interests of justice and in accordance with Rule 9.04.
¶ 19. Williamson's second assignment of error is that he was substantially prejudiced in his plea negotiations by not knowing about McGraw and his testimony. His allegation appears to be that he would have accepted the plea offer had he known of McGraw's testimony. The record shows that in letters to two of Williamson's prior attorneys, the assistant district attorney offered Williamson a plea agreement of a five-year sentence with two years to serve, to pay restitution to the victim Canton, and to pay a fine of $1,000 in exchange for a guilty plea. Williamson cites Morris v. State, 436 So.2d 1381, 1386 (Miss.1983) for the proposition that a defendant "is entitled to enter plea negotiations with all the cards on the table."
¶ 20. By the time of trial there was no outstanding plea offer for Williamson to accept. At one time there was an offer for a sentence of five years with two years to serve that had been offered to two of Williamson's prior attorneys. However, the assistant district attorney testified that the offer had expired without Williamson accepting it. The assistant district attorney said that when he approached the district attorney before the trial, the district attorney, in accordance with the wishes of the victim, Canton, told him to offer no plea deal.
¶ 21. We find that while McGraw's testimony gave more details of the assault, his testimony was not sufficiently incriminating that had it been known earlier by the defendant that it would have affected his decision not to accept the plea offer. Williamson himself testified that he punched Canton in the nose with enough force to knock Canton to the ground. His testimony regarding provocation was not believable. Officer McNamee testified that he stopped Williamson as he fled from the scene in his truck and noticed blood on Williamson's knuckles. Canton testified that he was punched repeatedly by Williamson for no reason. Canton's plastic surgeon testified about the serious and disfiguring nature of the injury inflicted upon Canton by Williamson. Thus, we find that even if McGraw's testimony were excluded, there was enough evidence to find Williamson guilty of the aggravated *1287 assault of Canton. We find no merit to this assignment of error.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TWELVE YEARS TO SERVE AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., CONCURS IN RESULT ONLY. GRIFFIS, J., NOT PARTICIPATING.