## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00832-SCT

*HENRY HUGHES, a/k/a HENRY L. HUGHES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/29/97 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD BURDINE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| | GLENN W. WATTS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/1998 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Henry Hughes was convicted of the murder of Kenny Woods by a Lowndes County Circuit Court jury in May of 1997. Aggrieved, Hughes appeals his conviction to this Court, raising as his sole issue whether the verdict of the jury was against the overwhelming weight of the evidence.

¶2. The facts presented by the prosecution at trial concerning the events on the night in question differ from those presented by the defense. For the purpose of clarity, each version is represented separately. First, witnesses for the prosecution testified as follows:

¶3. During the summer of 1994, Kenny Woods went to Derrick Guyton's house, held Guyton at gunpoint, and took over four ounces of cocaine from Guyton's house. On the same night, Guyton visited Henry Hughes and told him Woods had stolen the drugs. In response, Hughes stated: "Derrick, I'll take care of him for you." In return for murdering Woods, Guyton agreed to supply Hughes with money to rent a house. In addition, Guyton bought Hughes a truck and supplied Hughes with funds to buy a nine millimeter

handgun.

¶4. On November 15, 1994, the day of the murder, Kenny Woods was employed as a mechanic at King Auto Service in Lowndes County, Mississippi. Calvin King, the owner of King Auto Service, testified that at about 5:00 that evening Hughes visited Woods at King Auto Service. Approximately forty minutes after he arrived, Hughes told Woods that he would see him "after while" and left the auto service in a light yellow truck.

¶5. The prosecution next called Nicholas Durrah who testified that between 6:20 and 6:40 p.m., a short time after Hughes left the auto service, Durrah heard three gun shots while working on the roof of Annie Durrah's house. Durrah then noticed a light colored truck traveling at a rapid rate of speed from the vicinity of the shots.

¶6. Between 8:00 and 9:00 on the same evening, Annie Durrah was traveling to the grocery store when she noticed a body lying on the side of the road. She then went to her aunt's house and phoned the police.

¶7. Mike Hargrove, an acquaintance of Hughes, was inside his house at about 8:00 to 8:30 on the night of November 15, 1994 when he heard the sound of a car in his back yard. Hargrove looked outside and noticed Hughes walking away from his truck and toward the street. After Hargrove asked him to remove the truck from his yard, Hughes responded that he would give Hargrove "all the drugs [he] wanted if [he would] let it stay there." Hargrove declined and Hughes drove away. Hargrove described Hughes as "nervous" as they spoke.

¶8. Derrick Guyton, Hughes' accomplice, testified that he had asked Hughes when he was going to "do it" many times during the months prior to the murder, to which Hughes repeatedly replied, "I'm going to do it. I'm going to do it." On the night of November 15, 1994, Hughes paged Guyton on his beeper. When Guyton returned his call, Hughes asked Guyton to come over to his house because he needed to see him. Guyton went to Hughes' house at which time Hughes told Guyton that he "did it." When Guyton did not believe him, Hughes told Guyton to watch the 10:00 news. Hughes told Guyton he had temporarily hidden the gun under the house, but had subsequently thrown it in an unidentified body of water.

¶9. After the jury heard the preceding testimony, the defense placed alibi witnesses on the stand whose testimony directly opposed that presented by the prosecution. Rosemary Ledbetter, a former girlfriend of Hughes, testified that she and her daughter visited Hughes' house on the night of November 15, 1994 because Hughes had requested that they come to pick up some barbeque. When they arrived between 6:00 and 6:30 p.m., Hughes was alone at his house. They left the house about ten to fifteen minutes after they arrived. Latanya Ledbetter, Rosemary's daughter, corroborated her mother's testimony that they had visited Hughes on the night in question.

¶10. Hughes' former sister-in-law, Anberitha Matthews, then testified that she had begun to go into labor and called Hughes' house between 6:00 and 6:30 on the night in question. She was trying to reach her husband, James Hughes, who was living with Henry Hughes, but Henry answered the phone and told Matthews her husband was not at the house. Anberitha's baby was born at 7:04 p.m. on November 15, 1994.

¶11. James Hughes testified that he arrived at the house from work at about 5:30 p.m. that evening and learned from Henry that Anberitha was in labor. After remaining at the house to visit with a guest, Angie

Ball, for approximately thirty-five to forty minutes, Henry Hughes took James to the hospital between 6:00 to 6:15 p.m. James Hughes had no recollection of any other person at the house from the time he arrived home from work to the time they left for the hospital. Henry Hughes remained at the hospital approximately ten minutes before he left.

¶12. Based upon the foregoing evidence, Hughes was found guilty of murder and sentenced to life imprisonment. On May 30, 1997, Hughes filed a motion for a judgment notwithstanding the verdict or in the alternative a new trial which was denied by the lower court.

## DISCUSSION

¶13. A motion for a judgment notwithstanding the verdict essentially asks the court to hold, as a matter of law, that the verdict of the jury may not stand. ***Nelson v. State***, No. 93-KA-00965-SCT, 1998 WL 753523, at *4 (Miss. Oct. 29, 1998)(*citing **Pharr v. State***, 465 So. 2d 294, 301 (Miss. 1984)). Once the jury has returned a verdict of guilty, this Court is not at liberty to direct the discharge of the defendant unless it concludes that the evidence, taken in the light most favorable to the verdict, is such that no reasonable juror could have found the defendant guilty beyond a reasonable doubt. ***Pharr***, 465 So. 2d at 301.

¶14. Regarding the issue of whether a new trial should have been granted by the lower court, this Court has previously held:

> We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. ***Pearson v. State***, 428 So. 2d 1361, 1364 (Miss. 1983). Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system.

***Burrell v. State***, 613 So. 2d 1186, 1191 (Miss. 1993)(*quoting **Groseclose v. State***, 440 So. 2d 297, 300 (Miss. 1983)).

¶15. The prosecution called Derrick Guyton, Nicholas Durrah, and Mike Hargrove to the witness stand, all of whom offered testimony which implicated Hughes in the murder of Kenny Woods. On the contrary, the defense offered four alibi witnesses whose testimony placed Hughes away from the scene where Durrah heard gun shots on November 15, 1994.

¶16. Nicholas Durrah was the only witness called by the prosecution who provided testimony concerning the time during which the gun shots were heard -- between 6:20 p.m. and 6:40 p.m. in the evening. Hughes argues the verdict was against the overwhelming weight of the evidence since during this period of time the uncontradicted testimony of the alibi witnesses placed Hughes six to seven miles from the area where the gun shots were heard. However, this argument is not well taken. The testimony of Rosemary and Latanya Ledbetter was contradicted by James Hughes. Rosemary Ledbetter testified that she and her daughter went to Hughes' house between 6:00 and 6:30 and that Henry Hughes was the only person at the house during that time. James Hughes testified that he was in the house during that time. Further, James Hughes testified that according to his recollection, Angie Ball was the only guest in the house from 5:30 p.m. when he arrived home from work to 6:15 p.m. when Henry Hughes took him to the hospital.

¶17. Anberitha Matthews' testimony was also contradicted by James Hughes' testimony. Anberitha testified that she called between 6:00 p.m. and 6:30 p.m. on the evening of the murder to tell her husband James that

she was in labor. She alleged that Henry Hughes answered the phone and said James was not home. On the contrary, James Hughes testified that he had been home from work since 5:30 that afternoon. Although she stated that she was positive that she called between 6:00 p.m. and 6:30 p.m., James Hughes testified that she had called at around 5:30 p.m. and that his brother took him to the hospital between 6:00 p.m. and 6:15 p.m.

¶18. It is well settled that in such a case of conflicting testimony, each distinct view is absorbed into the minds of the jury as the finders of fact, and it is within the province of the jury to determine the credibility among several witnesses. *Jackson v. State*, 614 So. 2d 965, 972 (Miss. 1993). The jury is under no obligation to accept an alibi defense asserted by the accused and his witnesses. *Burrell*, 613 So. 2d at 1191; *Lee v. State*, 457 So. 2d 920 (Miss. 1984); *Ruffin v. State*, 447 So. 2d 113 (Miss. 1984). Rather, an alibi defense simply raises an issue of fact to be resolved by the jury. *Gray v. State*, 549 So. 2d 1316, 1319 (Miss. 1989). The jury in the case sub judice weighed the conflicting circumstantial evidence accordingly. Hughes cannot properly argue that his alibi witnesses presented conclusive evidence of his innocence. The evidence presented by the alibi witnesses merely provides the jury with additional accounts of the events on November 15, 1994, and does not constitute the overwhelming weight of the evidence in this case.

¶19. Hughes further asserts the prosecution put on insufficient proof concerning both Hughes' motive to kill Kenny Woods and Hughes' opportunity to carry out the murder. This argument is without merit. As to motive, Derrick Guyton testified that he and Hughes entered into an agreement whereby Guyton would supply Hughes with housing, transportation, and a weapon in return for killing Woods. In light of this testimony, the jury could conclude that Hughes' motive underlying the murder was monetary gain.

¶20. As to opportunity, two witnesses called by the prosecution placed Hughes at Woods' place of employment on the day of the murder. Charles Darnell testified that as Hughes was leaving, he told Woods he would see him "after while" and departed in a light colored truck. Nicholas Durrah testified that shortly after hearing gun shots he saw a light colored truck speeding down the same road on which Woods' body was found. As a result of this testimony the jury could conclude that Hughes was near the scene of the murder at the time the murder took place. Therefore, sufficient evidence concerning opportunity was presented by the prosecution.

¶21. Affirmation of this case will not sanction an unconscionable injustice. The evidence presented at trial was not overwhelmingly in favor of the innocence of the accused. The testimony introduced by the prosecution directly contradicted the testimony introduced by the accused, and in such a case it is wholly a jury determination as to whom to believe. Therefore, when viewed in the light most favorable to the verdict, the evidence presented at trial could lead a reasonable juror to find the defendant guilty beyond a reasonable doubt. As such, we will not disturb the verdict and find the lower court did not err in denying Hughes' request for a j.n.o.v. or in the alternative a new trial.

## CONCLUSION

¶22. Juries have traditionally decided issues of conflicting evidentiary fact. The jury decided the instant case adversely to the accused. We find substantial and credible evidence in the record to support a finding that Hughes shot and killed Kenny Woods. Accordingly, Hughes' conviction and life sentence is affirmed.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE**

**CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND WALLER, JJ., CONCUR.**