788 So.2d 788 (2000)
Johnny L. COLEMAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00607-COA.
Court of Appeals of Mississippi.
November 28, 2000.
Rehearing Denied February 20, 2001.
Certiorari Denied June 28, 2001.
*790 Dan W. Duggan Jr., William O. Townsend, Brandon, Attorneys For Appellant.
Office Of The Attorney General By Deirdre McCrory, Jackson, Attorneys For Appellee.
Before KING, P.J., MOORE, and THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Johnny L. Coleman was convicted of voyeurism and sentenced as an habitual offender to life imprisonment without parole. Coleman appeals, asserting the following issues:
I. DID THE LOWER COURT ERR IN FINDING THAT THE WEIGHT OF THE EVIDENCE SUPPORTED A CONVICTION?
II. WAS COLEMAN DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
III. DID THE SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE VIOLATE THE *791 CONSTITUTIONALLY GUARANTEED PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT?

FACTS
¶ 2. On August 7, 1998, Scott Warren, his fiancee and the fiancee of his roommate were in his home. At approximately 12:30 A.M., Warren "was getting ready to go to bed" when he heard a noise on his front porch. Warren adjusted himself to see out of his window and saw "a piece of a head looking through" his front window. At this time Warren called the sheriff's department and reported the incident. Warren continued to watch the person's head until it disappeared. Several seconds later the head reappeared outside of his side window. Warren approached the window and saw the face of the person, whom he recognized as Coleman. Warren had met Coleman a couple of weeks prior to the incident.
¶ 3. Responding to a call made by Warren, an officer of the Pelahatchie Police Department was dispatched to Warren's house at 12:58 A.M. He parked his patrol car about 1500 feet away and began walking through yards towards Warren's house. When the officer was approximately 150 to 200 feet from Warren's house, he observed the alleged voyeur, Coleman, who was walking toward him. Coleman had been attempting to hide in the shadows and had finally been illuminated by a yard light. The officer ordered Coleman to stop, but he answered, "I ain't done nothing" and began to run away from the officer. The officer pursued Coleman continuing to order him to stop. After Coleman fled into a wooded area, the K-9 unit of the sheriff's department, as well as several officers of the sheriff's department and the police department, joined the pursuit. An hour and two minutes after the chase began, Coleman was apprehended, advised of his rights and arrested.
¶ 4. Police investigation revealed a gray five-gallon bucket turned upside down below the side window of Warren's house. Warren testified at trial that he had not put the bucket there, and it was not there when he retired for the night of August 7. Warren also positively identified Coleman as the person who was looking through his front and side windows on the night in question.
¶ 5. At trial, Coleman testified that he was celebrating his birthday at his uncle's house by drinking a liter of whiskey and "at least a twelve pack" of beer. He continued to explain that he had left his uncle's house at "about 1:00, 1:15" in the morning and "caught a ride" to the Super Stop truck stop on Highway 43. Coleman claimed that he purchased some snacks and a couple of cigars at the Super Stop and began walking back to the party. During this walk he claimed to overhear someone in the woods making racial slurs and other such remarks, which caused him to run in fear. Coleman admitted to running from the pursuing group; however, he claimed that he had no idea that they were officers. Coleman testified that the men he was running from never identified themselves as police officers. Coleman denied having looked into Warren's windows.

ANALYSIS

I. DID THE LOWER COURT ERR IN FINDING THAT THE WEIGHT OF THE EVIDENCE SUPPORTED A CONVICTION?
¶ 6. When presented with a challenge to the weight of the evidence, this court "must accept as true the evidence favorable to the state." Van Buren v. State, 498 So.2d 1224, 1229 (Miss.1986). It has also been established that "the jury is *792 the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 991 (Miss.1987). A new trial will not be ordered unless this court is convinced that "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983); See also Ford v. State, 753 So.2d 489, 490 (Miss.Ct.App.1999); Danner v. State, 748 So.2d 844, 846 (Miss.Ct.App.1999); Turner v. State, 726 So.2d 117, 125 (Miss.1998). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Hughes v. State, 724 So.2d 893, 896 (Miss. 1998).
¶ 7. The mental element of the crime of voyeurism, described by the adjectives lewd, licentious and indecent, is the purpose and/or intent of the crime, which "is almost always, absent a confession, proved by inferences from conduct and not by direct evidence." Price v. State, 749 So.2d 1188, 1194 (Miss.Ct.App. 1999); see also Harrison v. State, 722 So.2d 681, 685 (Miss.1998). In the case at hand, there was no confession. Therefore, the lewd, licentious and indecent purpose and/or intent of the crime of voyeurism was inferred by the jury. The jury verdict was supported by the overwhelming weight of the evidence.

II. WAS COLEMAN DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
¶ 8. Coleman's claim is addressed under a two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss.1984). A successful completion of this test is paramount to Coleman's argument. He must successfully meet both prongs. Under Strickland and Stringer, Coleman must show that the counsel's performance was so deficient that it constituted prejudice. Strickland, 466 U.S. at 687. The asserting party must also show that "but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985).
¶ 9. Additionally, there is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). Application of the Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Scott v. State, 742 So.2d 1190 (¶ 14) (Miss.Ct.App.1999); Cole v. State, 666 So.2d 767, 777 (Miss.1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984). With this in mind, we now turn to Coleman's allegations of ineffectiveness.
¶ 10. Coleman contends that his trial counsel was constitutionally ineffective in questioning him about his prior convictions and in failing to move to suppress *793 them prior to trial. The record shows that the trial judge instructed Coleman that his prior convictions could be brought out for the purpose of impeaching his credibility as a witness. In retrospect, we cannot say why Coleman's counsel elected to bring forth the prior convictions, but maybe the trial judge lead counsel to believe that the prior convictions would be allowed. With this in mind, the counsel's strategy may have been to bring forth the prior convictions in order to preempt the prosecution from bringing them forward. Based on the weakness of Coleman's case and the strength of the State's case, the outcome would be the same. Therefore, the strength of the evidence against Coleman is such that Coleman is unable to meet the second prong of the Strickland test. But for his attorney's errors, the weight of the evidence against Coleman was such that the same result would have been achieved.

III. DID THE SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE VIOLATE THE CONSTITUTIONALLY GUARANTEED PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT?
¶ 11. Coleman cites Clowers v. State, 522 So.2d 762 (Miss.1988), and Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637, (1983), in an attempt to argue that his sentence of life imprisonment without parole was disproportionate to the crime and is, therefore, cruel and unusual punishment. However, the failure to raise this point at trial bars its consideration on appeal. Jones v. State, 606 So.2d 1051, 1058 (Miss.1992). The Mississippi Supreme Court made this clear and on point when it stated that: "we note that the record reflects appellant did not present to the trial court the proposition that his sentence was unconstitutional, that he may not assert that allegation on appeal, and it is procedurally barred." Reed v. State, 536 So.2d 1336, 1339 (Miss.1988).
¶ 12. Furthermore, even if Coleman had asserted the unconstitutionality of his sentence at the trial level, his argument should have failed. "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." Hoops v. State, 681 So.2d 521, 537 (Miss.1996). "Further, the general rule in this state is that a sentence cannot be disturbed on appeal so long as it does not exceed the maximum term allowed by statute." Hoops, 681 So.2d at 538 (quoting Fleming v. State, 604 So.2d 280, 302 (Miss.1992)). However, this Court will use the three-pronged analysis as set forth by the United States Supreme Court in Solem v. Helm, but only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality." Hoops, 681 So.2d at 538. The three factors set out in Solem for courts to consider when conducting a proportionality analysis if the threshold comparison is met are:
(a) gravity of the offense and the harshness of the penalty;
(b) sentences imposed on other criminals in the same jurisdiction; and
(c) sentences imposed for the commission of the same crime in different jurisdictions.
Solem, 463 U.S. at 292. Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), serves as a guide in the determination of this threshold comparison. The defendant in Rummel was sentenced to life in prison with the possibility of parole as an habitual offender for a third non-violent felony conviction.
Although the total loss from the three crimes was less than $250, the United States Supreme Court found Rummel's *794 sentence to be proportionate and not violative of the Eighth Amendment.
¶ 13. In light of Rummel, it cannot be argued that Coleman's sentence was grossly disproportionate to his crime. As long as the sentence is within the limits of the statute, the imposition of such sentence is within the sound discretion of the trial court and this Court will not reverse it. Therefore, an extended proportionality review under Solem is not warranted.
¶ 14. The indictment returned against Coleman properly charged that he was an habitual offender within the meaning of Miss.Code. Ann. § 99-19-83 (Rev.2000). Coleman had been convicted previously of the crimes of attempted rape, burglary and voyeurism. The gravity of Coleman's convictions prior to the incident at hand is such that a strict sentence is justified.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF VOYEURISM AND SENTENCE AS AN HABITUAL OFFENDER OF LIFE WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE RANKIN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND PAYNE, JJ., CONCUR.