794 So.2d 281 (2001)
Tibithal SELDERS a/k/a "Tib", Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-02012-COA.
Court of Appeals of Mississippi.
September 11, 2001.
*282 Whitman D. Mounger, Greenwood, William C. Trotter III, Belzoni, for Appellant.
Office of the Attorney General by Dewitt T. Allred III, for Appellee.
Before McMILLIN, C.J., THOMAS, and CHANDLER, JJ.
THOMAS, J., for the Court:
¶ 1. Tibithal Selders appeals his conviction for aggravated assault, raising the following issues as error:
I. WHETHER THE VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
II. WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE VICTIM'S CAR INTO EVIDENCE?
III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE A NEGLIGENT-ASSAULT LESSER-INCLUDED OFFENSE INSTRUCTION?
Finding no error, we affirm.

FACTS
¶ 2. At mid-day on April 21, 1998, Deborah Harris was in her car in the parking lot of a store called Double Quick in Belzoni when Tibithal Selders drove up in his *283 car, parking it in front of Harris. Selders began hollering at Harris asking who had left the lights on in his apartment. Harris and Selders had rented an apartment together and had just broken off a relationship about a month prior to this incident. Harris started her car and backed it up, trying to get away from Selders, who was still holding onto the door of the moving car. As Harris was backing up, Selders reached into his pants and pulled out a white-handled knife.
¶ 3. Selders began stabbing Harris with the knife. The car was still moving backward, but Harris was concentrating on fighting back as Selders was stabbing her. Selders cut her several times, the most serious injury being a cut on her cheek.
¶ 4. Harris's car backed into an obstruction in the parking lot and stopped. By that time, people were coming to her aid, and Selders departed. Harris went to the hospital and was treated for her injuries.
¶ 5. Lydia Tanner was a customer at the Double Quick at the time of the assault. She saw Selders at the door of Harris's car as she went into the store but paid no attention to their conversation. Inside, she heard a woman screaming, and she looked out and saw Selders stabbing Harris. Tanner testified that Selders was holding Harris by Harris's head as Selders stabbed her. Tanner went out and begged Selders to stop stabbing Harris, but he continued stabbing her. As Selders was leaving the parking lot he told Tanner to tell Harris "to keep her damn ass away from his apartment." In the car, Harris was bleeding from her injuries, and Tanner applied pressure to stop the bleeding as they awaited the ambulance.
¶ 6. Diane White also witnessed the attack. In court, she demonstrated the stabbing motions which she saw Selders making as he was cutting Harris. People were asking Selders to stop cutting Harris, but he continued cutting her. Then he just walked away.
¶ 7. Roger Baker also witnessed the attack. He saw Harris in her car and he saw Selders "on the outside, shoving a knife within the car, on the driver's side." As Selders was walking away with the knife still in his hand, Baker heard him say, "I told you to stay away from my apartment."
¶ 8. Belzoni Police Chief Steve Bingham was called to the scene and observed Harris bleeding from her injuries. Harris had several cut marks on her face and smaller lacerations in her hands. Also, Harris received a small puncture wound to the left upper breast or chest area, and there was blood inside Harris's car.
¶ 9. Selders testified that he had a box-cutter rather than a knife, and that he went to the Double Quick to get an apartment key from Harris. Selders claims that when he approached Harris's car and "asked for" the key and why the lights were on in "his" apartment, she began "talking crazy." Selders states that he did not lean into the car, but Harris "took hold of a knife she had," and he took the knife from her. Then he "basically" got into or leaned into the car. Selders claimed that he and Harris were "tussling" over the knife.
¶ 10. During this "tussle," the knife fell onto the ground, and Harris began backing her car, which hit the obstruction. At this point Selders states that he "was very upset," so he "grabbed the knife" from the ground, by its handle, and went over to her car, which now was stopped.
¶ 11. Selders "ran towards Harris, very upset, to tell her about the knife," which he now had in his possession, and as he was "telling her about the knife" he "accidentally" cut her on the jaw as he was making a stabbing motion with the knife in *284 his hand. But he "didn't mean to cut her." Selders went on to testify that since he was upset, he threw the knife into Harris's car, left the scene, and went home and cried.
¶ 12. In rebuttal, Diane White testified that when Selders got through with cutting Harris he had the knife "in his hand, and he walked back to his car with it." Chief Bingham testified that he searched Harris's car and found no knife. Deborah Harris testified that she did not have a weapon.
¶ 13. Selders was indicted in the Circuit Court of Humphreys County for aggravated assault upon Harris occurring on or about April 21, 1998. On November 15, 1999, a jury returned a verdict of guilty as charged; whereupon, on November 17, 1999, the Circuit Court, Honorable Jannie M. Lewis, Circuit Judge, presiding, sentenced Selders to a term of ten years imprisonment with five years thereof suspended. Selders filed and presented his motion for a new trial, which was denied by the trial court. It is from this denial that Selders now appeals.

ANALYSIS

I.

WHETHER VERDICT WAS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 14. Selders argues in the analysis section of his brief that his conviction should be reversed on grounds that the jury verdict was against the overwhelming weight of the evidence. To support this argument, Selders claims the evidence presented failed to show proof that Selders intended to cause bodily harm to Harris. However, Selders's only evidence found in the record to dispute this is that of his own testimony in which he claims that he did not intend to cut Harris. The overwhelming weight of the evidence from the record clearly shows that Selders, armed with a knife or boxcutter, approached Harris and stabbed her numerous times to the body and face.
¶ 15. The decision to grant or deny a motion for new trial is discretionary with the trial court. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In order to preserve the issue for consideration on appeal, the defendant must raise the issue that the verdict was against the overwhelming weight of the evidence as a ground for his motion for new trial. Howard v. State, 507 So.2d 58, 63 (Miss.1987). In Ford v. State, 753 So.2d 489, 490 (Miss. Ct.App.1999), we held that:
[i]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
(citing Danner v. State, 748 So.2d 844, 846 (Miss.Ct.App.1999)). See also Turner v. State, 726 So.2d 117, 125 (Miss.1998); Herring v. State, 691 So.2d 948, 957 (Miss. 1997); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Hughes v. State, 724 So.2d 893, 896 (Miss.1998). "In determining whether a jury verdict is against the overwhelming weight of the evidence, the court accepts as true the evidence favorable to the State." Wetz v. State, 503 So.2d 803, 812 (Miss.1987). See also McClain, 625 So.2d at 781; Van Buren v. State, 498 So.2d 1224, 1229 (Miss.1986). It *285 has also been established that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 991 (Miss.1987). See also Hilliard v. State, 749 So.2d 1015, 1017 (Miss.1999); Lewis v. State, 580 So.2d 1279, 1288 (Miss. 1991); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979). Based on the record before us, suffice it to say the jury's verdict was not against the overwhelming weight of the evidence. This assignment of error is without merit.

II.

WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE VICTIM'S CAR INTO EVIDENCE?
¶ 16. Selders contends that the photographs in question were admitted in violation of the Discovery Rule, in that the photographs "had not been given or shown to defense counsel during discovery." At trial, defense counsel's objection was grounded, in part, on his claim that he "had never seen those photographs." The trial court ruled that the defense was not prejudiced by the introduction of such photographs, and the photographs were allowed to be entered into evidence.
¶ 17. The photographs were of the interior of the victim's automobile, taken by Chief Bingham, and depicted the blood inside the car. Selders contends that the photographs were "prejudicial" because they were blurry and thus "did not show any alleged blood." However, Selders has offered no legal authority in support of the proposition that a photograph is inadmissible merely because it is "blurry."
¶ 18. Neither the question of whether Harris bled when she was stabbed with the knife nor the question of whether she was in the car when she was stabbed with the knife was at issue in this trial. However, to the extent that the defense may have wanted to argue to the jury that Harris somehow did not bleed when she was stabbed, or that her "alleged blood" would not have spilled out in the car, since these photographs do not clearly depict her blood, it could have done so. The clarity of the photographs was a matter of weight and worth of evidence, not of admissibility.
¶ 19. Photographs of the crime scene are generally admissible, and "some probative value" is the only requirement for the admission of photographs, absent a clear showing of unfair prejudice to the objecting party outweighing their probative value. Generally, photographs have probative value if they supplement a witness's testimony. Rulings on admission of photographs into evidence are committed to the discretion of the trial court and will be reversed only on a clear showing of abuse of discretion. Walker v. State, 671 So.2d 581, 601 (Miss.1995); Westbrook v. State, 658 So.2d 847, 849 (Miss.1995); Jenkins v. State, 607 So.2d 1171, 1175 (Miss. 1992). We find that the trial court did not abuse its discretion in admitting the photographs. Therefore, this assignment of error lacks merit.

III.

WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE A NEGLIGENT-ASSAULT LESSER-INCLUDED OFFENSE INSTRUCTION?
¶ 20. Selders complains that the trial court erred in failing to grant his instructions on the lesser-included offense of simple assault. Mississippi Code Annotated Section 97-3-7(1) (Rev.2000) defines simple assault under subsection (b) as the negligently causing of bodily injury to another *286 with a deadly weapon. The general rule in Mississippi is that jury instructions must be supported by evidence. Wilson v. State, 592 So.2d 993 (Miss.1991). Selders seems to believe that since he testified that he did not intend to injure Harris he has supplied the necessary requisite evidentiary basis for a negligent-assault instruction. However, our Mississippi Supreme Court has held that a requested lesser-included offense instruction should be given when there is a rational evidentiary basis for the jury to acquit the accused on the principal charge but find him guilty of the lesser-included offense. Toliver v. State, 600 So.2d 186, 192 (Miss.1992). A request for a lesser-included offense instruction is analyzed in the same way as a motion for "directed verdict;" i.e., the court considers only the evidence which favors the request, views the evidence in the light most favorable to the request, and gives the defendant full benefit of all reasonable inferences from the evidence. Lee v. State, 469 So.2d 1225, 1230-31 (Miss.1985); Fairchild v. State, 459 So.2d 793, 801 (Miss.1984).
¶ 21. Selders did not offer any evidence to contradict the State's evidence that Harris was stabbed numerous times by Selders or to contradict the State's evidence that Harris was wounded seriously enough to require stitches, meaning that Selders stabbed Harris in the cheek with sufficient force to inflict such a wound. Furthermore, Selders did not offer any evidence to contradict the State's evidence that Selders was stabbing Harris by making up-and-down stabbing motions with his hand and arm; in fact, Selders specifically admitted doing so.
¶ 22. A lesser-included offense instruction need not be given where, as here, the "uncontradicted physical facts so overwhelmingly support a finding of [the greater charge] and render so unreasonable the suggestion that the defendant may have been guilty only of [the lesser charge]." Harbin v. State, 478 So.2d 796, 799 (Miss. 1985). Even if Selders's bald claim that he did not "intend", the natural, probable, and inevitable consequences of his deliberate, intentional act is regarded as "evidence" in support of the request for the instruction, the requirement is that there must be a rational basis for the instruction. Moore v. State, 493 So.2d 1295, 1299 (Miss.1986). Here, there was none. Therefore, we hold the court ruled correctly in refusing the instruction.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HUMPHREYS COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HUMPHREYS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., concur.
BRANTLEY, J., not participating.