ROBERTS, J.,
for the Court.
¶ 1. Chester Smith, Jr., pled guilty to armed robbery. The DeSoto County Circuit Court originally sentenced Smith to thirty years in the custody of the Mississippi Department of Corrections with twenty years to serve followed by ten years post-release supervision. However, because the circuit court was concerned about remarks and nonverbal communications by Smith that could reasonably be interpreted as threatening, the circuit court did not file Smith’s sentencing order. Additionally, the circuit court instructed escorting authorities to report back if Smith made more threatening remarks. Two law enforcement officers heard Smith make threatening remarks while he was being transported to the DeSoto County Jail. The circuit court had Smith brought back before the court and sentenced Smith to serve thirty years in the custody of the MDOC with no portion of that sentence suspended.
¶ 2. Smith filed a motion for post-conviction collateral relief and argued that the circuit court violated his rights to due process. According to Smith, the circuit court failed to give him proper notice when the court resentenced him or revoked his prior sentence. Smith also argued that his sentence was grossly disproportionate to the crime he committed. The circuit court found Smith’s argument unpersuasive and denied Smith’s motion. Aggrieved, Smith appeals and claims the circuit court violated his due process rights when it amended the previous, unfiled sentencing order. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. The record indicates that Smith’s codefendant, Andrew Bledsoe, aimed a sawed-off shotgun at two men while Smith took their personal property. During Smith’s guilty plea hearing, one of the victims described the events as follows:
Your Honor, we were at the car wash, and when [Smith and Bledsoe] approached us, we had [a] conversation. They came back. We talked again, and then they came back with the gun. [Bledsoe] put a sawed[-]off shotgun to my side, and he said, “[g]ive me your money.” ... And then I handed him my wallet, and I turned to look at [the other victim] as Mr. Smith was steadily trying to take his arm off his watch [sic]. He took [the other victim’s] knife out of his pocket and started patting him down to try to find anything else. Mr. Smith got in my truck, tried to rip my CD player out, got every penny I had in my truck out [sic], went through my glove box, my glove compartment, and got my cell phone and an old cell phone that didn’t even work. And then they started — I heard one of them scream take his truck, but they never did, and he was rough with [the other victim], but Mr. Bledsoe, he was not rough with me. He just demanded me [sic], “[g]ive me your money.” So I simply handed him my wallet.
¶ 4. Bledsoe pled guilty and agreed to testify against Smith. In exchange, the prosecution agreed to recommend that Bledsoe receive a lenient sentence. The mother of Bledsoe’s child, Jamie Vinson, also agreed to testify against Smith. Their testimony was not necessary, because Smith pled guilty. The circuit court sentenced Bledsoe to thirty years in the custody of the MDOC with twenty years suspended and ten years to serve. The circuit court explained that Bledsoe was given “a great deal of consideration because of his cooperation and participation and early acceptance of his responsibility and his willingness to help the State with the case with [sic] Mr. Smith.”
*489 ¶ 5. Incident to Smith’s guilty plea, the circuit court sentenced Smith to thirty years in the custody of the MDOC with twenty years to serve followed by ten years post-release supervision. The circuit court added, “I do feel like that Mr. Smith was more in control in this situation and [the] more experienced, aged person, and I don’t feel like he’s been honest [with] the Court up here; and also, the Court can obviously take into consideration his entire record and the threats made to law enforcement officers.”[1] The circuit court asked Smith whether he had “a problem with this.” Smith answered, “[n]o, sir.”
¶ 6. At that point, the circuit court observed, “you looked at your partner back there now like you want to do something to him, and then you looked at these boys over here again like you want to do something to them. Who do you want to do something to?” Smith answered, “Mo-body, Your Honor.” The circuit court then noted that Smith sent a letter to Vinson and posted Vinson’s social security number and birth date on the envelope. Smith’s letter to Vinson stated in part, “I sent your baby’s daddy [sic] weak a-out. Men do what they want [to] do. Boys do what they can.” The circuit court then recessed and stated for the record:
This is an unusual circumstance without [Smith] present, ... but I’ve instructed my court bailiff to go back there and tell the police officers, the deputy sheriffs [sic] taking him back to the jail, that I want to know anything and everything [Smith] says between here and the jail in case any more threats are made because this Court will not sign the sentencing order until after [it] gets a report back about what Mr. Smith’s conduct and statements were between here and the jail and when he gets back to the jail and will in fact retain jurisdiction for the purpose of changing the sentence and upping the sentence if more threats or violence towards police officers or such related incidents or statements are made or occur.[2]
All right, I know this is a strange step, but the Court is extremely concerned about Mr. Smith’s behavior.
¶ 7. The circuit court reconvened later that same day and stated:
The Court’s been informed that, as the Court had concern when we sentenced him earlier about his demeanor here in court and his conduct, the Court instructed the court bailiffs to inform the Court if any other — any threats were made, and the Court is informed that something like that occurred.
The circuit court judge recognized that he had signed a sentencing order, but the order had not been entered into the minutes.[3] Smith’s attorney objected, but the *490 circuit court proceeded. At that point, Mike Philley of the DeSoto County Sheriffs Department testified that while Smith was in a holding room, Smith “made comments about killing somebody.” Deputy Philley also testified that Smith saw Vinson on the way to the county jail and said “he should have probably killed her.” Deputy Philley clarified that those were not Smith’s exact words and that Smith’s actual statement contained profanity. Deputy Philley had audio recording equipment in his patrol car. The recording equipment captured Smith’s statement, which was played for the circuit court.
¶ 8. Deputy Chris Cheslock also testified. According to Deputy Cheslock, as he left the courtroom with Smith, Smith said, “I should have killed the b-Additionally, as he escorted Smith down a set of stairs, Deputy Cheslock heard Smith say, “I should have killed the b -, a, and he better never let me out.”
¶ 9. The circuit court gave Smith an opportunity to be heard. Smith addressed the circuit court and explained as follows:
Your Honor, when I had left out [sic], I went back to the back, you know what I’m saying. I had told — I said, “[a]ll this time I got, I might as well kill myself.” The other officer took it the wrong way. He heard kill, and, you know, we had a little altercation.
So we go down there to the car and get in the car. When we passed by there, they were laughing and pointing and giggling like 20 years of my life, you know what I’m saying, is something small, something to look over. So that’s why I said what I said, but I’m not going to touch — I’m not a murderer or a robber. I’m not going to touch them [sic] folks.
The circuit court then sentenced Smith to thirty years in the custody of the MDOC. Unlike the circuit court’s initial sentencing order, the circuit court did not suspend any portion of Smith’s thirty-year sentence.
¶ 10. Smith subsequently filed a motion for post-conviction relief. Smith argued that his sentence was prohibitively and unnecessarily disparate to Bledsoe’s sentence as well as the sentences imposed on similar offenders in the same jurisdiction. Smith also argued that the circuit court violated his right to due process in that the circuit court did not provide his attorney with notice of what his attorney termed the “re[-]sentencing or revocation hearing.” Ultimately, the circuit court denied Smith’s motion. Smith now appeals.
STANDARD OF REVIEW
¶ 11. In reviewing a circuit court’s decision to deny a motion for post-conviction relief, we will not disturb the circuit court’s factual decisions unless they are clearly erroneous. Gatewood v. State, 909 So.2d 754, 756(¶3) (Miss.Ct.App.2005). However, we review questions of law de novo. Id.
ANALYSIS
I. WHETHER THE CIRCUIT COURT VIOLATED SMITH’S RIGHT TO DUE PROCESS.
¶ 12. According to Smith, the circuit court violated his rights to due process because his attorney did not receive written notice of what Smith terms his “resen-tencing” or, alternatively, the hearing on *491 the “revocation of his suspended sentence.” However, as the State persuasively argues, Smith was not re-sentenced, nor was his suspended sentence revoked. The record plainly demonstrates that the circuit court only sentenced Smith once.
¶ 13. “[T]he date of rendition of the judgment of the circuit court in term time, as well as in vacation, is the date when the judgment is signed by the judge and filed with the clerk for entry on the minutes; or if the judgment is not signed by the judge, the rendition date is the date it appears on the minutes of the court.” Mitchell v. State, 792 So.2d 192, 214(¶ 83) (Miss.2001) (quoting Jackson v. Schwartz, 240 So.2d 60, 62 (Miss.1970)). Initially, the circuit court tentatively sentenced Smith to thirty years in the custody of the MDOC with twenty years to serve followed by ten years of post-release supervision. However, the circuit court was concerned by Smith’s threatening behavior, so it never filed the tentative sentencing order with the circuit clerk for entry on the minutes. Accordingly, the circuit court did not resentence Smith, nor did it revoke Smith’s suspended sentence.
¶ 14. Additionally, the State ably points out that even if we were to find that the circuit court resentenced Smith — which we expressly do not find — there would still be no error in the circuit court’s decision. As the circuit court judge noted in denying Smith’s motion for post-conviction relief, “a circuit court has ‘inherent authority’ to alter a sentence until a regular term of court expires.” Ales v. State, 921 So.2d 1284, 1286(119) (Miss.Ct.App.2006). See also Miss. Comm’n on Judicial Performance v. Russell, 691 So.2d 929, 944 (Miss.1997) (holding “there is no indication that circuit court judges have inherent authority to modify sentences after the end of the term of court during which the sentence [was] given.”). It follows that we find no merit to this issue.
II. WHETHER SMITH’S SENTENCE IS GROSSLY DISPROPORTIONATE TO THE SENTENCES FOR SIMILAR CRIMES IN THE SAME JURISDICTION.
¶ 15. Smith abandoned this issue. To be precise, Smith’s attorney stated, “[a]f-ter reviewing the requirements of Hoops v. State, 681 So.2d 521 (Miss.1996), Appellant concedes that he cannot overcome the burden to show that the sentence was grossly disproportionate.” Accordingly, we will not consider this issue. Suffice it to say, we find no reversible error.
¶ 16. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ„ CONCUR. KING, C.J., CONCURS IN RESULT ONLY.

.Smith was twenty-five years old when the circuit court sentenced him. Bledsoe was nineteen years old. As for “the threats made to law enforcement officers,” testimony during Smith's guilty plea hearing indicated that during an unrelated incident, Smith was stopped for speeding in Memphis, Tennessee. After he was stopped, Smith was able to flee in his car. When authorities finally caught up to Smith, he fought multiple officers and injured at least two of them. After Smith was captured, he tried to kick out the window of a patrol car, spat in the backseat, and threatened violence against an officer and the officer's family.

2. During an unrelated incident in Memphis, Tennessee, "[Smith] refused to stop for [the] police. He resisted arrest. I believe he kicked the car door. He cussed. He threatened the officers. He threatened violence to their persons when he got out of jail."

. During Smith's initial sentencing hearing, the circuit court judge noted that he did not intend to sign Smith’s tentative sentencing order until after Smith was transported to the jail and the circuit court received word whether Smith made more threats. The record indicates that Smith's attorney did not hear the circuit court judge’s statement and— *490 without any ill intent — presented a draft sentencing order. The record also indicates that the circuit court judge signed Smith's initial sentencing order under the mistaken impression that it was Bledsoe's sentencing order he was signing. In any event, the circuit court never entered Smith's initial tentative sentencing order into the clerk's minutes.